JONATHAN BURLESON ET AL. V. JOHN BURLESON, JR., ET AL.

Depositions were objected to on the ground that the name of the officer was not written connectedly across the seal of the envelope, the two final letters being separated a quarter of an inch from the preceding ones: *Held*, that it being apparent that the last two letters were part of the name, and the name itself being intelligible, and there being no indication or pretense that the deposition had been tampered with, the objection was properly overruled. (Paschal's Dig., Art. 3728, Note 846.)

Under the statute of limitation of three years, adverse possession by parties claiming land as joint tenants or tenants in common is as available and effectual as though each of them claimed his part by a title in severalty. (Paschal's Dig., Art. 4622, Note 1031.)

The principal defendant, in explanation why a quit-claim transfer for the land in controversy had been made to him by his vendor, alleged, that his vendor's only reason for not warranting the title was his understanding that other parties claimed the land: *Held*, that it was not error, under this averment, to permit the defendant to prove that a conflicting location was outstanding on the land at the time the transfer was made.

The principal defendant, by his answer and cross-bill, made a party defendant of his vendor, whose deposition had previously been taken by the plaintiffs: *Held*, that the witness having no disqualifying interest in the suit, and the deposition being otherwise free from objection, it was erroneous to exclude the deposition at the instance of the principal defendant.

The cause having been submitted to the jury on special issues, and the jury having returned into court with their finding thereon, and also with a general verdict in favor of the defendants, the opposing party moved the court to submit to the jury certain other special issues: *Held*, that these issues were not tendered in due time, and there was no error in refusing to submit them.

Special issues are to be made up under the direction of the court below, and its refusal to submit such issues will not be revised in this court, except when it is made apparent that the rights of the party tendering such issues were not attainable by a general verdict. (Paschal's Dig., Art. 1469, Note 565.)

The plaintiffs, claiming as heirs of their deceased mother, sued their father's vendees for one-half the land, and for partition of the tract of land acquired from the State by virtue of a head-right certificate, which pertained to the community estate of the plaintiffs' parents. The defendants alleged that the grantee of the certificate, in the lifetime of his wife, the mother of the plaintiffs, sold and transferred the certificate to a certain third person, who was not a party to the suit; and the court below instructed the jury, that the sale to such person created an outstanding paramount title, which

debarred the plaintiffs from maintaining this action: *Held*, that the instruction was erroneous.

The defense of an outstanding paramount title is valid to a suit of trespass to try title, because the plaintiff must recover in that action on the strength of his own title, and not on the infirmity of his adversary's; but this rule is not applicable in an equitable proceeding for the partition of land. To import such a title into a proceeding of this nature, the defendants must make the holder of the outstanding title a party to the suit, so that the whole merits of the case may be adjudicated, or else they must show that they have acquired such title, or they must claim under it, or in some manner in connection with it. (Hill v. Portis, 14 Tex., 75, cited by the court. Paschal's Dig., Art. 5307, Note 1153.)

When a deed purports to convey the "interest" which the grantor owns in the property conveyed, parol evidence is admissible to prove what that interest was.

The effect of an estoppel *in pais* is to prevent the assertion of an unequivocal right or to preclude a good defense, and justice demands that it shall not be enforced unless substantiated in every particular. The ground on which such an estoppel proceeds is actual or constructive fraud on the part of the person sought to be estopped.

If the real owner of property, without giving notice of his title, knowingly permit a third person to purchase the property in good faith from the apparent owner, he will be estopped from asserting his title against such innocent purchaser. So, if one person does an act in such a manner as intentionally to make another believe that he has no rights, or has abandoned such as he had, and the other, trusting to that belief, does an act which he otherwise would not have done, the fraudulent party will be estopped from asserting his right.

But in order to apply an estoppel of this character it is indispensable that the party standing by and concealing his rights should be fully apprized of them, and should, by his conduct or gross neglect, encourage or influence the purchaser; for if he be wholly ignorant of his rights, or if the purchaser know them, or if the acts, or silence, or negligence of the party do not mislead the purchaser or in any manner affect the transaction, there can be no just inference of actual or constructive fraud, and no estoppel can result.

In this case, the principal defendant being, at the time of the purchase of the land in controversy, fully informed of the rights of the plaintiffs in it, and there being no evidence of any actual or constructive fraud on their part, inducing him to make the purchase, they should not be held to be estopped on account of their mere knowledge of the purchase, and their silence with regard to it at the time it was made.

After the death of the mother of the plaintiffs, their father transferred the community head-right certificate to the principal defendant in this suit by a deed, the construction of which is controverted, as to whether it purported

to convey only the father's interest or the entire interest both of himself and his deceased wife. This court declines determining the proper construction of the deed in this respect, but holds, that the patent obtained on the certificate by the principal defendant for the entire land constituted title from the sovereignty of the soil within the meaning of the statute of limitation of three years. (Pearson v. Burditt, 26 Tex., 151, and Whitehead v. Foley, *ante*, 1, cited by the court; Paschal's Dig., Art. 4622, Note 1031.)

The laws of this State place the wife's property in the possession of the husband, and give him the management of it. He may sue for it in his own name, and it would seem to follow, that suits for property claimed by a married woman may well be instituted against her husband alone, so as to involve the rights and possession of the wife. It seems, therefore, that a suit instituted against a husband alone for land claimed by his wife stops the running of the statute of limitation in her favor. (Paschal's Dig., Art. 4636, Note 1043; Art. 4621, Note 1030.)

Two of the plaintiffs had conveyed their interests in the land in controversy before the institution of this suit. Their vendees were not joined as original plaintiffs, but they subsequently intervened and asserted their rights: *Held*, that, as to their interests, the statute of limitation, if running previous to the suit, did not cease to run against them until they intervened. Before that time their interests were not in litigation.

The interest of another one of the original plaintiffs had, previous to the bringing of the suit, been conveyed by her to one of her co-plaintiffs, by whom, subsequent to the bringing of the suit, it was sold and conveyed to a third person, who thereupon also intervened for the assertion of his rights: *Held*, that as to this intervenor, he being a purchaser *lis pendens*, the statute of limitation ceased to run against his interest at the original institution of the suit, provided that previous thereto it had begun to run in favor of the defendants.

The rights asserted by the plaintiffs and intervenors are not unqualified or absolute, but can attach only to so much of the community property as remained in the hands of the survivor of the community after the payment of the community debts, if any there were. Any sales of the community property made by the survivor in good faith, for the purpose of paying such debts, or to reimburse himself for their payment out of his separate funds, will be sustained. (Jones v. Jones, 15 Tex., 143, cited by the court; Paschal's Dig., Art. 4638, Note 1045.)

It is incumbent on the plaintiffs and intervenors to show the amount of the community property left at the death of the mother of the plaintiffs, whose interest they claim, and also what then became of such property. If any of them have received any part of such property by way of advancements, they must account for it; and if either of them have received from either of the members of the community an amount equal to his or her share of the community estate after the payment of the debts, he or she will not be

25—XXVIII.

entitled to any part of the land now in controversy.  (Paschal's Dig., Art. 4642, Note 1049.)

It must further be made to appear that there is a necessity for resorting to the land in controversy as the last resource for the satisfaction of the rights of the plaintiffs and intervenors.  If the court can, in an equitable proceeding of this character, so marshal the community estate as to satisfy their rights, and at the same time afford protection to the purchasers under the survivor of the community, that course should be adopted.  (15 Tex., 369 and 519, cited by the court; 18 Id., 68; 20 Id., 202; Paschal's Dig., Art. 4642, Note 1049.)

APPEAL from Lampasas.  The case was tried before Hon. EDWARD H. VONTRESS, one of the district judges.

The property involved covers the "Lampasas springs," so called from the (not infrequent in that country) immense volume of water which bursts out of the earth and flows off at once into a good-sized river.  But in this case the name is better founded in the mineral properties of the waters.  The parties to the suit belong to a numerous, highly respectable, and well-known family, somewhat famous, as well in the history of revolutionary and border warfare as in the reports of Texas litigation.

The ponderous record and the voluminous briefs in the case alarmed Mr. JACKSON, the former *Reporter*, into the remark, that "a detailed statement of the pleadings and evidence would tend rather to confuse than to enlighten the mind of the reader."  And the "one hundred and thirty pages of pleadings" induced the learned judge who delivered the opinion to decline any critical analysis of them.

Nevertheless there is something more due from a *Reporter* than a mere epitome of the principles enunciated, however clearly the syllabus may express the rulings of the court, according to the facts, as understood by the writer of the opinion, and such facts as are given by that writer.  In a circuit practice, there must necessarily be much that is illogical and confused in the mutual altercations of parties, and nothing is more to be regretted than

these huge records, when, in every possible appeal, a few facts must cover the whole merits of the controversy.

Such voluminous records must necessarily prevent a thorough investigation both by court and *Reporter*. There is, then, nothing left to the losing party, except to abuse the court for not finding out that which he has himself effectually obscured.

In epitomizing the record in this case, the *Reporter* but performed a duty. And yet he is aware that he may widely mistake the significance of something intended by the counsel who swelled the record to over three hundred pages. Nothing can ever cure this habit, but to require the records to be printed, and to tax counsel for their unnecessary length. There is more excuse in this case for the length of the record and briefs when we give a page of the mandate, which shows how numerous were the parties and the character of the final judgment. The mandate reads thus:

"Before our Supreme Court at Austin, on the 19th day of November, A. D. 1866, the cause upon appeal to revise or reverse your judgment between Jonathan Burleson, Joseph Burleson, Nancy Evans, Joseph Evans, Abigail Stewart, John Stewart, Aaron Burleson, Elizabeth Stewart, Beverly Stewart, W. H. Howard, Pulaski Sutton, James Gibson, and John Burleson, Sr., appellants; and John Burleson, Jr., George W. Scott and Elizabeth his wife, Robert J. Moore and Martha J. his wife, A. B. Burleson, John Hoffman, Jesse Eaton, Thomas Tate, Jacob Tinbrook, Robert Murray, Christopher Quesenberry, Jesse Weaver, John S. Stump, Joseph A. McMurray, John Evans, Benjamin French, Riley Cross, John Z. Bean, S. F. Mains, Joseph Mains, Stephen Boyce, Docus Williams, James Gibson, Jesse Eaton, Samuel Parker, John M. Rae, Charles Mullins, William B. Covington, James M. Cross, Pacton Gibson, Dr. Wales, J. Douglass Brown, Tilman Weaver, A. W. Anderson, Squire Fletcher, E. E. Stewart,

E. W. Holler, W. C. Wiseman, M. D. Sherman, John
M. Forehand, B. S. Whitaker, Elkanah Quesenberry,
Thomas B. Huling, Moses Hughs, Samuel Wheat, Mary
M. Burleson, E. L. Lindsay, A. B. Scallin, John H. Fulk,
L. K. Miller, T. T. Bailey, John Dunn, J. C. Higgins,
Enoch Powell, T. J. Laughlin, J. W. Murrell, G. H. Cole-
man, R. H. Flanagin, David Love, D. W. Stewart, John
Blair, Henry Cook, William Oliphant, H. Stencey, J. M.
Litton, Edward Christian, P. A. Monroe, A. J. Horne, A.
O. Horne, and Fanny M. Foster, appellees, was deter-
mined; and therein our said Supreme Court made its order
in these words, to wit:

"No. 1814.—This cause came on to be heard on the
transcript of the record of the court below, and the same
being inspected, because it is the opinion of this court that
there was no error in the judgment of the court below
against John Burleson, Sr., it is ordered, adjudged, and
decreed, that so much of the judgment of the court below
be in all things affirmed, and that the said John Burleson
and his sureties, J. H. Greenwood, J. P. Gibson, and Hil-
lery Ryan, pay all costs in that behalf expended; and be-
cause it is the opinion of this court that there was error in
the judgment of the court below so far as the same con-
cerned the other appellants in this cause, it is further
ordered, adjudged, and decreed, that so much of the
judgment of the court below be reversed, and the cause
remanded for further proceedings to be had therein in
accordance with the opinion of this court, and that appel-
lees pay all costs thereabout in this court expended; and
this decision be certified below for observance.

"Wherefore we command you to observe the order of
our said Supreme Court in this behalf, and in all things to
have it duly recognized, obeyed, and executed."

There were several John Burlesons in Texas, and more
than one figures in this record.

About the year 1837, John Burleson, (sometimes distin-

guished from John Burleson, the brother of the better-known General Edward Burleson as "Hopping John Burleson,") an unlettered man of many eccentricities, emigrated to Texas and settled in Bastrop county, bringing with him Margaret Burleson, his wife, and a numerous family of children, who were the aforegoing plaintiffs in this case, as their descriptions indicate. Under the laws then in force, John Burleson, as "the head of a family," was entitled to a conditional certificate of one thousand two hundred and eighty acres of land. (Paschal's Dig., Arts. 4152, 4167, Notes 958, 960.) The government fulfilled its guaranty to immigrants, and, on the 26th April, 1838, "a conditional certificate for one thousand two hundred and eighty acres of land, being No. 50 of the second class, was issued by the board of land commissioners of Bastrop county to the said John Burleson."

On the 13th September of the same year Burleson sold this certificate to John Colver for $300.

This certificate seems to have been located (by whom does not appear, but it is believed in fact by Colver) and a survey made on the land in controversy the same year; the field-notes were returned to the general land office on the 11th day of June, 1841. On the 14th of July, 1854, the grantee of the certificate, "Hopping John Burleson," sold his conditional certificate to another John Burleson, called in the record "John Burleson, junior," but better known as John Burleson, the brother of General Edward and Aaron Burleson. On the 14th of July, 1854, an unconditional certificate was issued by the county court of Gonzales county to "John Burleson, junior," assignee of this "Hopping John Burleson," under the law then in force. (Paschal's Dig., Arts. 4199 to 4203, Note 962.) The certificate having issued in the name of the assignee, the patent issued on the 27th September, 1854, to this John Burleson, Jr., the assignee. (Id., Art. 4292.)

It will be seen that, in this transaction, the sale by the

grantee to Colver, in 1838, was wholly disregarded; and, whatever were his equities, the legal title to the land passed by the patent to John Burleson, Jr.

Margaret Burleson, the wife of this John Burleson, ("Hopping John,") departed this life in 1847 or 1848, leaving her husband the survivor of the community interest, and their children, the plaintiffs in this suit, who claimed one-half of the property in this land, as heirs of their mother. So that it will be seen that, in the sale to the assignee, "John Burleson, junior," not only were the rights of Colver, the first assignee, disregarded, but the community rights of the heirs to their mother's interest were not noticed. The theory of the claim really was, that the patent was issued in subordination to the rights of these heirs of the mother, and that the grantee of the patent held in trust for the plaintiffs, as heirs of their mother, to the extent of one-half of the land. The numerous defendants entered and held under the patent, either as tenants or purchasers under the patentee, "John Burleson, junior." A town was laid off and numerous improvements made.

On the 3d of April, 1857, the plaintiffs, as heirs of Margaret Burleson, their mother, commenced their suit against John Burleson and his grantees or tenants, and in their petition they set forth the history of the patent, the death of their mother, the descent cast upon them, the possession and denial of their claim by the defendants; their trespasses, "in total disregard of the right and title of the plaintiffs, though the right and title of the plaintiffs were well known to said defendants before entering upon and taking possession of said land, as aforesaid;" they claimed $5,000 for the trespasses; they prayed for "a judgment against said defendants, decreeing the plaintiffs one-half of said land, and that said half of said land may be partitioned and set apart to them," &c. Thus seeking, first, to recover their right; secondly, to have it partitioned to them.

In an amended petition, filed on the 5th of May, 1857, the plaintiffs declared against a number of the defendants as trespassers without any title, and prayed damages against them. On the 3d of May, 1858, John Burleson, the grantee, filed his "amended answer and cross-bill, in which he denied the right of the plaintiffs, because their mother died before the grantees of the conditional certificate had resided in the country long enough to entitle them to the uncónditional certificate; that their father acquired the unconditional certificate after the death of their mother, and therefore it was a separate property." This was the effect of the plea. Moreover, that their father proved up, sold with the full knowledge of the plaintiffs, and without any interference or claim on their part. That he purchased under a quit-claim deed, because of a rumor that there was an adverse location upon the land; that the plaintiffs were cognizant of all the facts of the sale, and made no objection; that he had paid expenses, $2,000 for lawyers' fees, &c., in obtaining the patent; that he has expended a large sum in laying off a town, inducing purchasers, and making valuable improvements; that all this was done with the knowledge of the plaintiffs, without their interposing any claim; that after all this was done, his vendor, John Burleson, Sr., had put it into the heads of the plaintiffs that they had some claim, and that they had combined and confederated together to assert the claim; that John Burleson was able to indemnify his children, and therefore he made him a party, in order that an equitable judgment may be rendered against him, alleging that, at most, the plaintiffs were only entitled to one-half the value of the certificate, and not of the land; and that they had received out of the community property of the father and mother the full value of their interest in said community property; that the plaintiffs were entitled to have the whole matter adjusted, and the interest which they had received substituted in place of their claim to

the land. He prayed to make John Burleson, Sr., a party, and for a decree in accordance with the equity which he set up. The plaintiffs filed especial exceptions to almost every position in this answer, and denied generally all the allegations in the cross-bill. John Burleson, Sr., or "Hopping John," answered the cross-bill, in substance alleging, that he only sold half of the certificate, and his vendee, John Burleson, Jr., knew of the claim of his children; that he was fraudulently induced to sell the land for the small sum of $600 by certain false statements by his vendee, which he set forth; that his vendee had already realized $10,000 for the sale of lots, and, because of the frauds and his weak state when he sold it, he prayed that the deed be canceled; that John Burleson, Jr., account, and, after being fully·reimbursed for all his outlays, that he pay the balance to those who were entitled to it.

John Burleson, Jr., the purchaser, on the 24th November, 1858, came back with an amended answer, in which he denied all the charges of fraud and fraudulent representations, in language stronger than polite. He admitted that he bought for $640, but without any knowledge of the claim of Margaret's children; he declared that all these children were present when the purchase-money was paid; that they had full notice and set up no claim; and now they are estopped from setting up any claim.

He now also set up and plead the sale by John Burleson, Sr., ("Hopping John,") to Samuel Colver, on the 13th September, 1838, of the conditional certificate upon which the bill really rested, as an outstanding title; "under protestation, nevertheless, to the same in any other *subsequent* suit or controversy, or for any other purpose than as a bar and estoppel·to the plaintiffs' right to recover in this or any other suit founded upon the same cause of action, and, with the aforesaid protestation, he says that at the time of said conveyance to said Colver, the said John Burleson, Sr., had and possessed a full, perfect, and complete

right to sell and convey said certificate entire, as well as the joint interest of his said wife, the mother of the plaintiffs, and in whose right they claim as their own; and that said conveyance transferred the entire interest in and to said certificate, and to the land that might be thereafter secured by its location, as against him; that said John Burleson, Sr., and his wife and their heirs forever, are precluded, by reason of this conveyance, from setting up any claim to the land in question, &c., pleading it as an outstanding title. [The *"protestation"* means that Colver had sued all parties on the chancery side of the Circuit Court of the United States for the land, and while the defendant plead this outstanding title, he was fighting shy of Colver.]

Other defendants adopted the answer of their co-defendant, John Burleson, Jr., and they plead his various deeds for different portions of the land. His daughters and sons-in-law plead deeds for an undivided half of the land; they plead their payments respectively as innocent purchasers; they suggested valuable improvements, and urged various equities for a decree. These defendants also plead title and color of title under the 15th section of the statute of limitation. (Paschal's Dig., Art. 4622, Note 1031.)

These daughters claimed in their separate rights, at any rate to the extent of one-half; and they claimed that they, as owners of separate property, held for three years; and they denied the effect of the suits against their husbands, and made themselves parties, claiming separate property under their deeds. They also plead the sale to Colver as an outstanding title.

The plaintiffs excepted to this long answer, and moved to strike out all which related to improvements, and which set up a special mode of partition; to strike out the plea of three years' limitation, because it is informal, and the facts show that it cannot be plead; so much as claims to

be innocent purchasers in good faith, and so much as sets up the outstanding title of Colver. The plaintiffs also, "by way of replication," answered the several pleas of the defendants. Stripped of the exceedingly harsh epithets of "fraud and swindle," the replication is a bilious charge, that in obtaining the title from John Burleson, Sr., John Burleson, Jr., resorted to false pretenses; that the latter and all his vendees knew of the rights of the plaintiffs in all their dealings; that the protest of estoppel had no merit; that the heirs never received any consideration; and that Scott and wife and Moore and wife, so far from being innocent purchasers in good faith, had in fact paid nothing for their deeds; and that the plea of limitation was the result of a combination, and fraudulent.

John Burleson, Sr., also put in several special exceptions to the pleas of outstanding title in Colver. These were, that the paper to Colver was over four years old; that it was stale; that it did not meet the real issues in the case; that Colver was not a party, as he must be before his title would be heard; and that the defendants did not claim under Colver, but set up prescriptive and adverse claim against him.

And, answering as to the deed to Colver, he said he never executed it, or, if he did, he was deceived into doing it; that he had paid Colver back his money; that it was only authority to locate in trust for him, and that the land was his any way. He seemed to relinquish any demand against the town-lot purchasers under John Burleson, Jr., Scott, and Moore and wife, by demanding half of the proceeds of the sales for himself, as his children had demanded the other half.

The defendants again amended, by pleading the three years' statute of limitation, *secundem artem*, and by filing the Colver deed as an outstanding title.

On the 25th of May, 1859, Pulaski Sutton and William H. Howard filed an intervention, claiming the interests

of the plaintiffs, Aaron Burleson and James Burleson, in the property, and they substituted themselves as parties, and adopted the averments of the plaintiffs. On the same day, James Gibson intervened, and claimed to have purchased the slaves of Jonathan Burleson and Abigail Stewart. All these purchasers averred entire innocence of all knowledge of Colver's title. The defendants filed a long special demurrer to these interventions. They also answered, that the purchases were made with full knowledge and *lis pendens*; that they had paid nothing, or, if they did, they took a quit-claim title; and they alleged against the intervenors all their former defenses, and they specially plead that Gibson entered as the tenant of Moore and wife, and afterwards betrayed them.

The plaintiffs again amended, averring the antiquity and staleness of the Colver title. The intervenors, Sutton and Howard, also filed a long amended petition, to aver how innocent they were of all the severe charges which the original parties alleged against each other. They put their case upon the ground, that when "Hopping John" Burleson sold to John Burleson, Jr., he had the right to sell as against Colver, but no right to sell the half which descended to his children.

On the 26th May, 1859, John Burleson filed a sworn plea, in which he charged that John Burleson, Jr., obtained the deed from him by falsely representing that the land was unfit for cultivation; only fit for stock; had no sulphur water upon it, only a "salt lake;" was not worth over fifty cents per acre, and he only wanted it to get his son, "Bill Burleson" (Aaron Burleson) out of Austin to keep his stock. To this the defendant answered, that at the time the existence of sulphur water was not known to them, but the reputation was a salt marsh, and so the purchaser believed. And so they denied the fraudulent representations.

John Burleson, Sr., rejoined, then if you were mistaken

in your representations of value, you misled me all the same, and I am entitled to be relieved in equity because of the mistake.

The intervenors also again plead all sorts of infancy, coverture, ignorance, and mistakes about their acquiesence in this sale. They also re-plead very uneasily against the "stale," Colver claim.

On the 24th November, 1858, the defendants excepted to John Burleson, Sr's, denial of the execution of the Colver.deed, because it was not sworn to, and because the plea of fraud rested upon no stated fact. Let it be here remarked, that this exception was afterwards sustained.

"Hopping John" also plead the two years' limitation against any fraudulent collusion of his own.

For a clear understanding of the rulings upon these various pleadings, the judgment of the court upon them is is here given:

"In this cause appeared the parties, plaintiffs and defendants, by their attorneys, and the plaintiffs submitted to the court their exceptions, filed to the plea of reading the depositions of Richard B. Jarman and Stephen Jarman, and the exceptions having been fully considered by the court, it is ordered, that said exceptions be, and the same are hereby, overruled; and the plaintiffs submitted to the court their motion, filed the —— day of May, 1859, to strike out the depositions of Samuel Colver, and the same having been fully considered by the court, it is ordered and decreed by the court, that said motion be, and the same is hereby, overruled.

"The plaintiffs and John Burleson, Sr., submitted to the court their general and special exceptions to the answer and cross bill of the defendant, John Burleson, Jr., filed on the 3d day of May, A. D. 1858. It is ordered, and adjudged, and decreed, that the aforesaid general and special exceptions be, and the same are hereby, overruled.

"And the plaintiffs and John Burleson, Sr., submitted

to the court their general and special exceptions to amended
answers of the defendants, G. W. Scott and wife, Robert
J. Moore and wife, and John Burleson, Sr., filed on the
24th day of November, 1858.   It is ordered, adjudged, and
decreed by the court, that said exceptions be, and they are
hereby, overruled, except that portion which relates to the
pleas of the statute of limitation of three years, plead by
the defendants, Elizabeth Scott and Martha J. Moore,
which portion of said exceptions is sustained.   It is there-
fore ordered, adjudged, and decreed by the court, that so
much of said pleas as sets up the plea of the statute of
limitation of three years for the said Elizabeth Scott and
Martha J. Moore, is hereby annulled, set aside, and held
for naught.

"And the plaintiffs and John Burleson, Sr., submitted
to the court their exceptions to the amended answers of
the defendants, Scott and wife, and Moore and wife, and
John Burleson, Jr., filed on the 24th and 25th days of May,
1859.   It is ordered, adjudged, and decreed by the court,
that said exceptions be, and the same are hereby, over-
ruled.

"And the defendant submitted to the court their excep-
tions to so much of the plaintiffs' amended petition of rep-
lication, filed at the fall term, 1858, as denies the execution
of the deed from John Burleson, Sr., to Samuel Colver,
and that it was fraudulently obtained by Colver from the
said John Burleson, Sr., and to so much of the plaintiffs'
pleadings as charges that the defendant, John Burleson,
Jr., obtained the title to the property in controversy from
said John Burleson, Sr., by fraudulent representations, and
to so much of the answer of John Burleson, Sr., filed No-
vember 24, 1858, as denies the execution of said deed to
the said Samuel Colver, that it was fraudulently obtained,
and to those portions of said answer that charges that the
the defendant, John Burleson, Jr., obtained said title from
the said John Burleson, Sr., by false and fraudulent repre-

sentations, and rescinded the contract and sale for fraud. It is ordered, adjudged, and decreed by the court, that the said exceptions be, and the same are hereby, sustained, and all the above-named portions of said pleadings are annulled, set aside, and held for naught, and the said John Burleson, Sr., have leave to amend his answer.

"And thereupon the defendants submitted to the court their exceptions to the petition and amended petition of the intervenors filed in this cause, and the same having been fully considered, it is ordered, adjudged, and decreed by the court, that said exceptions be, and the same are hereby, overruled."

The *Reporter* has thus omitted about sixty pages of the earlier altercations which were not noticed by the court, but which for some reason or other are copied by the clerk after the appeal bond.

The case now really stood upon the assertion of the right of the plaintiffs or their vendees, the intervenors, to recover half the land, as heirs of their mother, notwithstanding any knowledge of theirs of the sale by their father, and the effect of the outstanding title of Colver. The three years' plea of limitation in behalf of Scott and wife and Moore and wife, as amended, remained as a fact to be proved. The plea of false representations, fraud, and mistake in the sale from John Burleson, Sr., to John Burleson, Jr., also remained.

On motion and affidavits by James Burleson, his name was stricken out as a plaintiff.

The case being thus cleared of pleadings, to exclude which might or might not be error, the parties went to the jury.

The facts proved by the plaintiffs and intervenors were, 1st, the conditional and unconditional certificate to John Burleson, Sr.; 2d, the survey; 3d, the deed from John Burleson, Sr., to John Burleson, Jr., (the dates of these have already been noticed;) 4th, the various deeds to the

intervenors; 5th, the attorney who purchased for Howard and Sutton knew of the patent to John Burleson, Jr., of the adverse possession, of the fact that some of the heirs were present when their father sold the certificate, but he bought upon his judgment of the right, and the payment of the purchase-money was proved; 6th, the proof of the purchase of Gibson was made, also that he entered under Moore and wife, and purchased with knowledge of the Colver claim.

The defendants also proved the history of the certificates and the patent to John Burleson, Jr., dated 27th September, 1854, which had been recorded in the respective counties to which the land belonged; the deeds from Burleson to Moore and wife for one-half the land, and the deed to Scott and wife, and other deeds not so material, except as they proved valuable consideration for some of the purchasers. Pursuing their line of defense, the defendants proved that John Burleson, Sr., had taxable property when his wife died valued at about $12,000.

There was also proof of a location on the land by F. W. Chandler, and that the commissioners' objections to patenting in consequence had to be overcome by employing and paying lawyers. It was also proved that the plaintiffs, Nancy Evans, James Burleson, Elizabeth Stewart, Joseph P. Burleson, and Aaron Burleson did have knowledge of the transaction at the time their father sold the certificate to John Burleson, Jr., and their silent acquiescence was proved; that they understood the sale to be for the entire twelve hundred and eighty acres. It was proved that John Burleson, Jr., Scott, and Moore settled on the land in August, 1854; that the springs were not then developed; the last spring was a salt marsh; that fifty cents an acre was a fair price for the land; that the water has little trace of mineral; that there are about two hundred acres of good land upon the tract; that it was excellent land for stock. The defendants proved the deed to

Samuel Colver. James Burleson, who had sold out and withdrawn from the suit, testified to the representations of John Burleson, Jr., about the land in the same general terms which had been plead by "Hopping John," that is, that he knew of the rights of the heirs and talked about them; that no positive consent was given; that he represented that there was no sulphur spring or running water on the land, and that it was only worth fifty cents an acre, &c. The plaintiffs proved the land to be worth one or two dollars per acre. It was also proved that on his return from purchasing the land, John Burleson, Jr., said that he could get $12,000 for the land.

The judge in his charge treated the case as a suit for partition, and not as one in which the plaintiffs' title was first to be settled. He told the jury that it was necessary to determine the question of fraud raised by John Burleson, Sr., against John Burleson, Jr.; that they would determine whether the plaintiffs were tenants in common with John Burleson, Jr., after his purchase, and in effect, upon the facts, that the certificate was community property; and, taking the whole charge together, the judge, in effect, charged that the sale to Colver divested the community of the property; and returning to the sale by John Burleson, Sr., to John Burleson, Jr., he charged the jury to find whether the fraud alleged did in fact exist; if it did, it would cut off the defense, because, if the deed were founded in fraud, it passed no title, and if that issue should be found for the plaintiffs, they had the right to recover, unless the sale to Colver barred the property, but in that event there was a charge given in reference to improvements made in good faith.

As to the plea of estoppel interposed against the plaintiffs, he told the jury, that if the plaintiffs stood by when the sale was made to John Burleson, Jr., and it was understood that the whole interest to and in the land was sold, and that they encouraged the sale, and did not forbid

it, and that thereby he was induced to make the purchase, under the belief that he was buying a good title to the whole land, then the plaintiffs were bound by the sale, for such conduct, under the law, is deemed fraudulent.

The effect of the charge was to cut off the plea of three years' limitation.

The court refused the charge asked by the plaintiffs, to the effect, that the defendants could take no benefit from the Samuel Colver deed, because he was not a party; could not recover if he were a party; that the claim was barred; that the Colver title was unrecorded when John Burleson, Jr., purchased; that by long negligence Colver had forfeited his rights, &c.

The court, for the plaintiffs, in effect, charged the jury, that John Burleson, Jr., obtained the patent in trust for himself and the heirs of Margaret Burleson, and that they could not be estopped, unless it were by misrepresentations or concealment at the time of the purchase, and not by these unless the purchaser were deceived thereby as to a fact not within his own knowledge; and that as to those present at the sale, they were not bound to speak, if they were ignorant of their rights; and, in any event, if John Burleson, Jr., obtained the deed by fraudulent misrepresentations to their father, the heirs were not bound by the deed.

In behalf of the intervenors, instructions were given to the effect, that they might be innocent purchasers in good faith as against the Colver deed; that John Burleson, Jr., might hold both the patent and the possession under it, in trust for himself and the heirs of Margaret Burleson, so as to prevent the statute of limitations; and that, even if the heirs could be estopped by such a sale, their vendees without notice could not be, either by the patent, or the possession under it, or the Colver deed; and that the suit by the heirs interrupted the statute, and the intervenors took the benefit of that interruption. These intervenors

framed their instructions into special issues, which the court permitted to go to the jury.

In behalf of John Burleson, Sr., it was charged, that he could not be held guilty of fraud in selling a larger interest than he had in the land, unless the fact were unknown to the vendee, or where the knowledge was equally in the reach of both; that if he were misled by false representations of his vendee to sell the land for a less price than he himself believed it to be worth, the sale was void for fraud; that if he relied upon the misrepresentations of his vendee, although they might have been unintentional, he had the right to have the deed set aside.

But, on motion of John Burleson, Jr., the jury were told that "Hopping John" was entitled to no such relief, unless he did full equity himself; that if he concealed the sale to Colver, then he is in no condition to ask a recision of his deed to John Burleson, Jr.

The effect of these various and somewhat contradictory instructions (only a short epitome of which is here given) will be found in the extraordinary special verdict, which is here copied:

"The jury retired to consider of their verdict and answers to the special issues presented by the parties respectively, as also the issues presented by the pleadings not embraced in said issues; and thereupon the jury returned into court their finding upon said special issues as follows, to wit: To special issues presented by the said plaintiffs, as follows:

"1st. Did John Burleson, Jr., know at the time of the purchase by him of John Burleson, Sr., that the plaintiffs had an interest in the land?

"2d. Which of the plaintiffs, if any, were present at the time of the purchase?

"3d. Did any of the plaintiffs, and which ones, encourage the defendant, John Burleson, Jr., to purchase?

"4th. Was the half of the land at the time of the purchase worth $600 00?

"5th. Were any, and which, of the plaintiffs married women at the time of the purchase?

"To which questions the aforesaid jury responded as follows to the said issues or questions:

"To No. 1 they answer, 'He did.'    To No. 2 they answer, 'Nancy Evans, James Burleson, Elizabeth Stewart, Joseph Burleson, and Aaron Burleson.'    To No. 3 they answer, 'The ones named above.'    To No. 4 they answer, 'It was.'    To No. 5 they answer, 'The following plaintiffs were married women: Nancy Evans and Abigail and Elizabeth Stewart.

.    (Signed)            L. J. TOWNSEND, *Foreman.*

"And to the issues presented by the defendants, as follows, to·wit:

"1st. Did John Burleson, Sr., sell to John Burleson, Jr., the whole of his head-right certificate and land in controversy on the 14th of July, 1854, or did he only sell one-half?

"2d. Were any of the plaintiffs present when the sale was made by John Burleson, Sr., to John Burleson, Jr., and if any were present, say from the testimony who were present?

"3d. If you find that any of said plaintiffs were present when said sale was made, did they, or any of them, inform said John Burleson, Jr., that they had an interest in the property, or did they remain silent, knowing that their father, John Burleson, Sr., was selling the entire certificate and the land covered by it?

"4th. At what date did the intervenors, Howard, Sutton, and Gibson, purchase the interests which they claim?

"5th. At what time, if at all, did John Burleson, Jr., go into actual possession of the land in controversy, and·has such possession been continuous and unbroken since it

commenced by Scott and wife, and Moore and wife, and John Burleson, Jr.?

"6th. Have John Burleson, Jr., and Scott and wife, and Moore and wife, publicly and notoriously kept possession of the land, claiming it as their own and holding it for themselves alone, to the exclusion of any one else?

"7th. At what date was the patent to John Burleson, Jr., first recorded?

"8th. Had John Burleson, Jr., and Scott and wife, and Moore and wife, actual adverse and continuous possession of the land, holding the same as their own by chain of title or color of title from the sovereignty of the soil, for more than three years before the 24th day of May, 1857?

"9th. Did Scott and wife and Moore and wife acquire possession of the land under their deeds from John Burleson, Jr., without any knowledge of the claim of the plaintiffs and intervenors?

"10th. Did John Burleson, Sr., sell his conditional headright certificate to Samuel Colver for a valuable consideration; and, if so, at what date did he so sell and convey it, and was his wife, Margaret Burleson, at the time, living or dead?

"11th. Did John Burleson, Sr., at the time he sold to John Burleson, Jr., fraudulently withhold from him the fact that he had previously sold to Samuel Colver?

"12th. Had Moore and wife and Scott and wife had possession in good faith for more than one year before suit was brought, and have they made permanent and valuable improvements on the land during their possession?

"13th. What amount of improvements has been made by Scott and wife and what amount by Moore and wife, and what amount of rents is each liable for?

"To which said questions or issues the jury returned the following answers:

"To No. 1 they answer, 'He sold the entire certificate.' To No. 2 they answer, 'The following were present: Nancy

Evans, James Burleson, Elizabeth Stewart, Joseph P. Burleson, and Aaron Burleson.' To No. 3 they answer, 'They remained silent.' To No. 4 they answer, 'Howard purchased 10th October, 1856; Sutton 15th October, 1856; Gibson 12th December, 1857.' To No. 5 they answer, 'He went into possession in the fall of 1854, and has retained ever since.' To No. 6 they answer, 'They have.' To No. 7 they answer, 'August 15, 1855.' To No. 8 they answer, 'They did.' To No. 9 they answer, 'They did.' To No. 10 they answer, 'He sold and conveyed it for a valuable consideration on the 13th day of September, 1838; his wife was living at that date.' To No. 11 they answer, 'He did.' To No. 12 they answer, 'They did.' To No. 13 they answer, 'Scott and wife $18,974 47, Moore and wife $3,200; Scott and wife liable for $1,940 for rent.'

"And to the issues presented by the party, John Burleson, Sr., as follows, to wit:

"1st. At the time of the sale from John Burleson, Sr., to John Burleson, Jr., had John Burleson, Sr., seen the land which was the subject-matter of the sale?

"2d. Had John Burleson, Jr., then seen the land?

"3d. Was the defendant, John Burleson, Sr., induced to sell the land by the fraudulent representations of John Burleson, Jr., with regard to the value of the land?

"4th. Did John Burleson, Jr., then represent the land to be of less value than he himself believed it to be?

"5th. Did John Burleson, Sr., in fixing the price of the land at the time of the sale, rely altogether upon information furnished to him by John Burleson, Jr., and did such information turn out to have been either intentionally or unintentionally or materially incorrect?

"6th. What is the value of the improvements made by defendant Scott and by defendant Moore?

"7th. What was the value of the rents, of the improvements made by Scott and by Moore, from the time they were made until now?

"To which said issues the jury returned the following answers:

"To No. 1 they answer, 'He had not.'   To No. 2 they answer, 'He had.'   To No. 3 they answer, 'He was not.' To No. 4 they answer, 'He did.'   To No. 5 they answer, 'He did not.'   To No. 6 they answer, 'Scott's $18,874 47, Moore's $3,200.'   To No. 7 they answer, 'Scott's $1,940.'

"The said jury having further returned into court, in addition to said special findings, the following verdict, to wit: 'We, the jury, find in favor of the defendants, John Burleson, Jr., and those holding under him'"—

The court rendered a judgment in favor of the defendants as against the plaintiffs and intervenors, and in favor of John Burleson, Jr., as to the bill for the recision of deed by John Burleson, Sr.

There were some bills of exceptions to the rulings of the court upon the admission of evidence, which are fully explained in the opinion.   The plaintiffs and intervenors moved for a new trial, on the grounds that their exceptions to the pleadings were overruled; that the depositions of the Jarmons were not suppressed; that the general charge and the special charges were erroneous and contradictory; that the judgment should have been for the plaintiffs on the special verdict; and that the verdict was without evidence, and not responsive to the issues.   The motion was overruled, and the plaintiffs appealed.

Elaborate and able arguments were filed by the counsel respectively representing the different parties, but their length precludes inserting them in full, and a very inadequate abstract of the points and citations made is all that can be given.

*Hancock & West* and *Harwood,* for the appellants and intervenors.—I. The community interest inherited by the plaintiffs from their deceased mother was a legal right, not a mere equity.   (Wilkinson v. Wilkinson, 20 Tex., 237.)

II. The original plaintiffs having sued for the entire interest claimed by them and all the intervenors, the statute of limitation was stopped by the original institution of the suit, not only as to the original plaintiffs and such of the intervenors as purchased from them after the suit was brought, but also as to the other intervenors who acquired their interests anterior to the suit. (Ang. on Limit., §§ 434, 435; Adams on Eject., 158.)

III. As to the evidence necessary in order to charge the plaintiffs on the score of advancements, counsel cited Cragg v. Smalley, 24 Tex., and contended that the case of Maxwell v. Layton, 20 Tex., 202, relied on by the appellees, could have no application to this case.

IV. In order for the defendants to avail themselves of the doctrine of estoppel, they must show, first, that the plaintiffs' interest was sold to the party under whom they claim; second, that the plaintiffs were present when it was sold, and knew that it was being sold; third, that either by silence or otherwise they encouraged the sale; fourth, that the purchaser was ignorant of their rights; and, fifth, that their conduct had a direct influence in effecting the sale, or was one of the main inducements to it. (Story's Eq. Juris., §§ 385, 386; 1 Smith's Leading Cases, 643.)

V. To constitute an outstanding title or valid defense, it must be such a title as would enable the holder to recover if he were asserting it as plaintiff in the case. (3 Marsh C. C., 438; Adams on Eject., 138, and cases cited in note *j*, 37, 40, 43.)

VI. With reference to the question of stale demand, counsel cited 4 Tex., 159; 9 Id., 129, 289; 13 Id., 484; 15 Id., 211; 17 Id., 10; 18 Id., 113; 20 Id., 694, 706.

VII. The testimony of John Burleson, Sr., having been taken before he was. made a party to the suit, was improperly excluded. (Greenl. on Ev., § 418.)

*J. A. & R. Green*, for John Burleson, Sr.—I. To the

Colver title we object, that it could not be set up in an equitable proceeding, unless Colver was made a party, or the parties setting it up connected themselves with it. (Story's Eq. Plead., §§ 72, 76, 76 *a*, 78; 14 Tex., 75; 8 Tex., 482.)

II. The statute requires that the name of the officer taking a deposition shall be written across the seal of the envelope. (O. & W. Dig., Art. 454.) The object of the enactment is to prevent the envelope being opened without detection. In this case the envelope is an exhibit in the record, and the officer's name is not written across the seal. The object as well as the letter of the statute is violated. If this deposition be excluded and the authentication ruled to be insufficient, the Colver title falls for want of proof of execution.

III. The Colver title stipulated for further assurances of title as soon as the laws would permit, and such an instrument is therefore an executory, not an executed contract. (Story on Cont., § 18; Short v. Price, 17 Tex, 397.) Being an executory contract, and of seventeen years' standing, it is a stale demand, and will not be enforced in equity, (2 Kent, 468; De Witt v. Miller, 9 Tex., 239; Smith v. Hampton, 13 Tex., 459,) unless under peculiar circumstances, not existing in this case. (Mitchell v. Sheppard, 13 Tex., 484; Holman v. Criswell, 15 Tex., 394; Vardeman v. Lawson, 17 Tex., 10; Watson v. Inman, 23 Tex., 531.)

IV. the Colver title, if executory in any respect, was barred in four years. (Whiteman v. Castlebury, 8 Tex., 441; Early v. Sterrett, 18 Tex., 117; Mitchell v. Sheppard, 13 Tex., 484.)

V. Whether the instrument to Colver is a deed or a title bond, executed or executory, it became extinguished as a claim to the land by failure to record before the purchase of Burleson, Jr., in 1854. Such is the effect of our registration laws. Colver's claim is only for damages; it

has become a money demand. (2 Story's Eq., § 798, and note; Mitchell v. Sheppard, 13 Tex., 489.)

VI. The facts of this cause present a clear case for a recision in favor of Burleson, Sr. (Hill. on Vend., 340; 2 Paige, 390; 8 Tex., 418.)

*Chandler & Turner,* for the appellees.—I. The Colver title was valid and outstanding, and therefore was available to the defendants, though Colver was not a party to the suit. (Rawlin v. Coltson, 1 A. K. Marsh., marg. p. 241; Jackson v. Loop, 9 Cow., 85; Adams on Eject., 33; 3 Harr. (Del.,) 535; 15 Ill., 148, 540; 4 Md., 173; 2 Bibb, 130; 6 Ired., 159; 2 Greenl. on Ev., § 303; 1 Stew. (Ala.,) 512; 1 Yerg., 83; 10 Tex., 503.)

II. The intervenors purchased from the heirs, and are in no better condition than the heirs themselves. A purchaser from heirs buys at his peril, and only gets such title as the heirs had. If the ancestor had sold the property in his lifetime, the purchaser from his heirs takes nothing by his purchase; and so it is held in Kentucky under registration laws similar to our own. The statute requiring a title to be recorded, in order to constitute constructive notice of it, does not apply in favor of such a purchaser. (Butts v. Graham, 4 Monr., 120; Hancock v. Beverly, 6 B. Monr., 531.) These authorities are the more binding in this case, from the fact that all the intervenors took quit-claim deeds.

III. With reference to the question of notice, counsel cited Ford v. Clements, 13 Tex., 597; Sneed v. Houston, 15 Tex., 307; Mercer v. Burton, 17 Tex., 209; Humphries v. Case, 22 Tex., 45; Sug. on Vend., 479; 1 How., 196.)

4. As many of the heirs as stood by and permitted their father to sell the certificate, without asserting their rights, are now estopped from setting up any claim; and this applies as well to *femes covert* and minors as to adults. (1

Story's Eq., § 385; 2 Sug. on Vend., 515; 8 B. Monr., 542; 2 Rich. Eq., (S. C.,) 120; 1 Johns. Ch., 344; 6 Id. Ch., 166.)

V. The following authorities show that the title from John Burleson, Sr., to Colver was not barred by any one of our statutes of limitation; nor is it a stale demand. (4 Tex., 159; 13 Id., 38, 484; •15 Id., 249, 394; 17 Id., 10; 18 Id., 113; 21 Id., 121.)

SMITH, J.—The pleadings of the parties to this cause are so lengthy, and the exceptions to them so numerous, covering some one hundred and thirty pages, that we do not deem it our duty to investigate them critically, in order to detect any errors that may have been committed in the rulings of the court, and we will notice such matters only as appear distinctly, and are important to the rights of the parties.

The appellants objected to the depositions of Stephen Jarmon and R. B. Jarmon, upon the ground that the name of the officer taking them was not consecutively written across the seal. Art. 454, O. & W. Dig., does not direct that the name shall be thus written. We see nothing against the separation of each letter of the name, if it be intelligible. The name of the officer, "Bennett," is written across the seal. The two last letters of the name are disconnected from those preceding perhaps a fourth of an inch. We think that was caused by writing the name before the envelope was finally closed. It is quite apparent that the two last letters are parts of his name. There was no error in overruling the objection to these depositions.

Whether the deed from Robert J. Moore and wife to George W. Scott and wife was properly acknowledged by her, as a married woman, and certified to by the notary public, we deem it unnecessary now to determine. The land appears to have been given to Moore and wife jointly

by John Burleson, Jr.; and, unexplained, it may be presumed to be community property between them, which he could convey alone. (21 Tex., 247.) But waiving that point, if the deed were not sufficient to affect a partition of the land, then the possession remained with them as joint tenants or tenants in common, and, so far as limitation of three years is concerned, would be as available as if their joint possession had been severed by a valid deed, and each one had held the possession of his part separately.

We see no injury resulting from the depositions of Mitchell and Harris, nor from the introduction of the assessment rolls. The location of Chandler upon the premises was properly received in evidence, under the averment of the defendant, John Burleson, Jr., that such a claim was upon the land at the date of his purchase from John Burleson, Sr., and that the title was then controverted by Chandler. There was no error in reading them.

We are of opinion that the plaintiffs and intervenors had the right to read the deposition of John Burleson, Sr. It had been taken before he was made defendant, at the instance of the objecting party, John Burleson, Jr., (1 Grenl. on Ev., §§ 167, 418,) and we are unable to see any interest he has with the plaintiffs and intervenors that will disqualify him as a witness for them. His being a party to the suit, of itself, can afford no ground of objection. (O. & W. Dig., Art. 481.)

The court did not err in refusing to receive the two special issues tendered by the intervenors after the jury had returned into court with the verdict. They were not tendered in due time, and for that reason the court might well have refused them. The special issues are made up under the direction of the court, and his action upon them will not be revised here, unless it be necessary to the rights of the parties complaining, and be made to appear that his rights could not have been attained by a general verdict. (O. & W. Dig., Art. 494.)

John Burleson, Sr., the father of the plaintiffs, on the 26th April, 1838, obtained his conditional head-right certificate for one thousand two hundred and eighty acres of land in Bastrop county, and for $300 sold it to Samuel Colver, 13th September, 1838, and obligated himself to make title when the laws of the country would permit, the latter to pay all expenses whatever on the same. The certificate was surveyed upon the land in suit October 9, 1838, and the field-notes returned to the general land office on the 11th June, 1841. Margaret Burleson, wife of said John Burleson, Sr., and mother of the plaintiffs, died intestate in 1847, and they claim as her heirs one-half of the premises in suit, &c. The defendants set up this sale as an outstanding superior title, and the court instructed the jury that, if the sale were made during the lifetime of the mother of the plaintiffs, it would constitute such superior outstanding title, that the plaintiffs took nothing by inheritance at her death, and that they must find a verdict for the defendants.

If this were properly a suit for the recovery of land, as ejectment or trespass to try title, the existence of a paramount outstanding title would constitute a good defense; the plaintiff in such cases must recover upon the strength of his own title, and not on the weakness of the defendant's. (8 Tex., 443; 10 Id., 503.) In such cases, the parties hold no way in privity of estate or possession, and neither is estopped to deny the rights of the other. But it is believed the above rule does not obtain in an equitable proceeding. All persons who may have an interest in the subject-matter or object of a suit in a court of equity must be made parties plaintiff or defendant. (Story Eq. Plead., §72.)

The court of equity has ample power to bring before it all persons interested in the subject of the suit, and adjudicate the rights of all concerned, and settle the rights of all in one final decree. It is a rule, that equity delighteth not

in doing justice by halves. It is not to be desired, and is not to the interest of the parties, that this protracted litigation shall end between these parties only to be renewed by Colver, whose claim is fully known to the parties and the court.

The case of Hill v. Portis, 14 Tex., 75, was a suit for partition of land, and the defendants set up a superior outstanding equitable title in a third party, and relied upon it as a valid defense; and Mr. Justice WHEELER remarks, that, "if this were an action of ejectment or trespass to try title, it would be sufficient to defeat the plaintiff's action to show an outstanding paramount title in a third person; but, being an equitable proceeding, it was perhaps necessary for the defendants, to enable them to defeat the plaintiff's title on the ground of a resulting trust or an equitable title out of the plaintiff, to show either that they had acquired that title, or had some valid defense to urge against it; and, if the latter, the holder of the title must have been made a party before his rights would be adjudicated upon by a court of equity."

The interest of Colver can be only of an equitable character, and before his title could be noticed for any purpose he should have been made a party, or the defendants should have shown that they owned it, or held under or in some way in connection with it.

There is a reciprocal trust, a fiduciary relationship existing, or that did exist, between Colver, the vendee, and his vendor, or their representatives, different from that which exists between the plaintiff in ejectment and the owner of an outstanding title, that can be relied upon by the defendant. The vendee, under an executory contract, if the consideration be paid, is regarded as the true owner of the premises, his title is superior to that of the vendor, who could not hold against him. The vendor's title is a mere shadow when compared with that of the vendee; but still the vendor has a title in the premises, though subordinate to the

vendee's, sufficient to repel the mere intruder, or to recover the possession from him, or any person who does not hold under the vendee, and discards all connection with him, and has no title himself superior to the vendee. (Wright v. Thompson, 14 Tex., 558.)

We must conclude that the court erred in its rulings in respect to the title of Colver. It should not have been noticed in this suit for any purpose, he not being a party to it.

John Burleson, Jr., avers that he purchased of John Burleson, Sr., his entire head-right certificate and the land it was located upon, in the presence of the plaintiffs, who, knowing their rights, fraudulently induced him to purchase, under the impression that he was acquiring clear, valid title to the whole head-right certificate and land, and pleads this as an *estoppel in pais.*

The deed of transfer purports to convey all his right, title, interest, privileges, and immunities in the conditional certificate for twelve hundred and eighty acres of land, and authorized the vendee to obtain from the county court of Gonzales county an unconditional certificate for said quantity of land. It may be well contended that this deed only transferred what interest the grantor had at its date, and did not assume to convey any more. It did not transfer the certificate or the land specifically, but his interest in them only, whatever that may have been, without attempting to define or describe what that interest was, whether a fourth, half, or any other proportion; and if that be the proper construction of the deed, it would be held only to pass, or as only attempting to pass, what interest he then had, (July, 1854,) and parol proof would be competent to show what that interest was; it being a latent ambiguity, the explanation of it by parol evidence does not contradict or vary the terms of the written instrument. (Brown v. Jackson, 3 Wheat., 448; Blanchard v. Brooks, 12 Peck, 65.)

We are inclined to the opinion, however, that the true construction of the deed is, that it purports to convey the entire certificate and the land. We must look to the whole deed in determining the intention of the parties, and in doubtful matters it is taken more strongly against the grantor. Here the grantor sets up his title to twelve hundred and eighty acres of land as his head-right, and authorizes the grantee to procure an unconditional certificate for that number of acres. These characteristics seem to indicate strongly that he intended to convey, and the grantee expected to receive, the entire interest in the land and certificate. (Hensley v. Peck, 20 Tex., 673.)

We do not deem it necessary at this time to decide upon the true construction of the deed, or whether parol testimony can be received to show, not what estate the grantor had at the date of the deed, but what was the contract of the parties, and what they intended should pass by it. We will, for the purpose of considering the *estoppel in pais*, consider the deed as embracing in its terms and meaning the entire certificate and land.

The effect of an *estoppel in pais* is to prevent the assertion of an unequivocal right, or preclude a good defense, and justice demands that it should not be enforced unless substantiated in every particular. (12 Barb., 1287.) The ground upon which the estoppel proceeds is fraud, actual or constructive, on the part of the person sought to be estopped. What will amount to the suggestion of a falsehood, or the suppression of the truth, may be difficult to determine in all cases; but some turpitude, some inexcusable wrong, that constituted the direct motive, or induced the outlay or purchase, is necessary to give silence or acquiescence the force of an *estoppel in pais*. Hence, the ignorance of the true state of the title on the part of the purchaser must concur with willful misrepresentation or concealment on the part of the person estopped. (1 Gil., 430.) If the real owner knowingly permit a third person

to purchase property without notice of his claim from the apparent owner, he will be estopped from asserting his title against such innocent and *bona fide* purchaser. (8 B. Monr., 539.)

The true doctrine is well expressed in Story's Eq., § 386. In order to apply an estoppel, it is indispensable that the party standing by and concealing his rights should be fully apprized of them, and should, by his conduct or gross neglect, encourage or influence the purchaser; for if he be wholly ignorant of his rights, or the purchaser know them, or if his acts, silence, or negligence do not mislead or in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part. Rights can be lost or forfeited only by such conduct as would make it fraudulent and against conscience to assert them.

If one act in such a manner as intentionally to make another believe that he has no rights, or has abandoned them, and the other, trusting to that belief, does an act which he otherwise would not have done, the fraudulent party will be estopped from asserting his right. (5 Ired. Eq., 355.)

From these authorities, we are of opinion that the plaintiffs and intervenors are not estopped from asserting any rights they may have in the premises from any act, omission, or silence proved on their part at the time the defendant, John Burleson, Jr., purchased the certificate from John Burleson, Sr. It appears that he had full knowledge of the claims of the plaintiffs; he was not deceived as to their rights; they misrepresented nothing; they concealed nothing from him; they did not disclaim their rights; nor did they in any way give him any reason to believe that they had or would abandon any rights they then had. He made the announcement that he would go home, and return in a short time and see them in respect to their claim to the land. It appears to us that the main groundwork of an

*estoppel in pais* is wanting. There has been no fraud, actual or constructive, practiced by the plaintiffs upon the defendant, John Burleson, Jr. Nor does the special verdict of the jury contradict this conclusion; but the general verdict for the defendants may by construction involve a finding to the contrary, and that there was fraud practiced by them. We believe there was no evidence to authorize such a finding upon the plea of estoppel.

We are of opinion that the patent issued on the — day of September, 1854, to John Burleson, Jr., constituted title in him from the sovereignty of the soil within the meaning of the law in respect to the three years' limitation. (O. & W. Dig., Art. 1328; Pearson v. Burditt, Austin term, 1862, [26 Tex., 157;] Whitehead v. Foley, *ante*, 1.)

The laws of this State place the wife's property in the possession of the husband, and give him the management of it, (O. & W. Dig., Art. 1393,) and he can sue for her separate property in his own name. And it would seem to follow, that suits for property claimed by her may well be instituted against the husband only; and that the institution of this suit April 3, 1857, against George W. Scott and Robert J. Moore, was sufficient to involve the possession and rights of the wife of each of them, and that the running of limitation in their favor ceased at that date. It was suspended by the suit.

Aaron Burleson and James Burleson, though party plaintiffs in this suit, had conveyed their interest in the land before its institution, directly or indirectly, to the intervenors, Howard and Sutton, who intervened and were made parties in their own right May 24, 1859. We are of opinion that limitation, if running at all, was not suspended, as to the shares they owned, until they intervened on the 24th May, 1859. Their interests were not in litigation before that date.

The interest of Abigail Stewart was transferred to and owned by one of the plaintiffs, Jonathan Burleson, at the

27—XXVIII

institution of the suit. That was, after the suit was brought, sold to Gibson, who also intervened and set up his interest. Limitation as to his share was suspended by the suit on April 3, 1857, he being a *lis pendens* purchaser. If limitation had begun to operate in favor of the defendants, it was suspended at the institution of the suit on April 3, 1857, as to the interests of Jonathan Burleson and Abigail Stewart, owned by Gibson, Joseph Burleson, Elizabeth Stewart, and Nancy Evans.

It was in proof that the tract was subdivided and conveyed to various persons in distinct tracts, and it will be observed that the proof of an adverse and continuous possession of each parcel for three years was not distinctly proved, at least not with that certainty that it should be in order to make out title by the statute of limitation.

We deem it proper to state, that the rights of the plaintiffs and the intervenors are purely equitable, and accrued to them at the death of Margaret Burleson, in 1847, nearly twenty years ago. If they desire to enforce them at this late day, they must be prepared to show and do equity themselves. Their rights of inheritance in the community property of their father and deceased mother were not unqualified and absolute, but only attached upon the residue that might be left in the hands of their father after extinguishing the community debts, if there were any. There is no evidence of the community being free of debt, or that there was an administration on her estate. In the absence of any administration, the surviving husband was, for some purposes, the representative of the community, and any sales made by him in good faith, and for the purpose of paying the community debts, or of reimbursing himself for community debts paid by him with his separate funds, would be sustained. (Jones v. Jones, 15 Tex., 143.)

And we are of opinion that the plaintiffs and intervenors must show the amount of community property left at the death of Margaret Burleson, deceased, and what has

become of it. They must account for what they have received of the community property and by way of advancements from her or John Burleson, Sr., if anything; and if it be made to appear that either has received an amount equal to his or her share in the community after the payment of debts, then he or she would not be entitled to any part of the land in suit. It must be made to appear that there is a necessity of resorting to the land in this suit, as the last resort from which they can realize their interests in the community, like a purchaser from one tenant in common of a specific part, by metes and bounds, of an undivided tract of land. A court of equity, in the partition of the land, will protect him in the purchase, if the other tenants in common can be satisfied, by assigning them other parts of the tract equal in value to their interest in the whole tract: and the interest of the vendor will be located upon the part thus sold, and will inure to the benefit of his vendee. None of these equitable considerations have been set up by the plaintiffs in their petition, though the defendants have insisted upon them to some extent in their answer.

We see no error in the proceedings had upon the cross-bill of John Burleson, Sr., against his co-defendants, to cancel the deed from him to John Burleson, Jr. We believe the evidence sustained the verdict in that respect.

Because of the errors in the cause as to the plaintiffs and intervenors below, the judgments as to them are reversed, and cause remanded for further proceedings in conformity with this opinion, and the judgment against John Burleson, Sr., in favor of the other defendants below is affirmed.

ORDERED ACCORDINGLY.