PORTIS AND WIFE AND OTHERS V. HILL AND WIFE AND OTHERS.

Under the colonization law of 1823, the grantee of lands could alienate the same as soon as he had acquired the right of property therein ; and the period of the acquisition of the right is referred by the 22d Article, to the date of the concession. The original grantee in this case had received a complete title in 1824, and the conveyance from him was dated in 1825, after performance of the condition of cultivation.

See this case as to trusts where the purchase money is paid by one person and the deed taken in the name of another—as to proof, after lapse of time, and as to right of action after death of both trustee and beneficiary.

Evidence of the oral admissions of a deceased party, made in the hearing of a single witness, and so entirely unsupported, not to say contradicted, by the other evidence in the case, ought certainly to be received, after such a lapse of time, with great caution, and due allowance for the frailty of memory and the liability to mistake or forget the true import of the language used.

Where A paid the purchase money and took a conveyance to B of an undivided half of a tract of land, and after the death of A and B, the heirs of B sued the grantor for partition, the Court said, They cannot recover in the capacity of trustees for the benefit of A, for they do not seek to recover in that capacity, and by bringing this action in their own right, they have repudiated the trust relation.

If this were an action of ejectment, or of trespass to try title, it would be sufficient to defeat the plaintiffs' action, to show an outstanding, permanent title in a third person. But being an equitable proceeding, (a suit for partition,) it was, perhaps necessary for the defendants, to enable them to defeat the plaintiffs' title on the ground of a resulting trust, or an equitable title out of the plaintiffs, to show either that they had acquired that title, or had some valid defence to urge against it. And if the latter, the holder of the title must have been made a party to the suit, before his rights would be adjudicated upon by a Court of Equity.

Where A sued B for a partition of land, an undivided half of which had been conveyed by the ancestor of B to the ancestor of A, and B set up as a defence that the purchase money was paid by C, who was empressario of the colony, and that the conveyance was taken to the ancestor of A to avoid the law which forbade the said empresario to take or receive any portion of said lands, and that the same was fraudulent and void; *Held*, That B could not impeach the title on the ground of fraud, in which, if it had been made to appear, his ancestor was equally implicated with his vendee.

See this case as to defences and parties in a suit for partition.

An acknowledgement by a person in possession, that he does not claim adversely

to one person, does not preclude his possession from being adverse as to all others.
See this case as to forfeiture of land by infants abandoning the country.

Appeal from Austin. The grant to James Cummings was completed by the act of possession on the 16th of August, 1824; the deed from Cummings to James E. B. Austin was dated February 5th, 1825. There was evidence that the land had been continuously cultivated from 1824 to the present time, by persons claiming under Cummings. One of the defendants' pleas set up as a defence, that the conveyance to James E. B. Austin was really and in fact for the sole use, benefit and behoof of Stephen F. Austin who was empressario of the colonial grant to him by that name ; that the said conveyance was thus executed to avoid the law which forbade the said Austin to take or receive any portion of the said lands, and that the same was fraudulent and void.

William Cummings, the father of Samuel A. Cummings, died in 1828 or 1829. "Some short time after the death of Wm. "Cummings, his widow went to the State of Kentucky, taking "with her the defendant Samuel A. Cummings, then a child "about two years old." He returned sometime in the year 1847.

*G. W. Smith*, for appellants.

*J. W. Harris*, for appellees.

WHEELER, J. It is objected to the deed of the 5th of February, 1825, that it evidences a sale made before the expiration of two years from the date of the original grant, and before cultivation; and is therefore void.

The 22d Article of the Colonization Law of 1823, (1 White, 588,) declares that, "the date of the concession of lands con-"stitutes an inviolable law, for the right of property and legal "ownership." The consequence of such right of property and

legal ownership, is the power of alienation. And there is no inhibition in the law of 1823, express or implied, of the right to alienate, at any time after the right of property has been acquired. The 29th Article declares that "Every individual "shall be free to leave the empire, and can alienate the lands "over which he may have acquired the right of property, agree- "ably to the tenor of this law." In the case of Holliman v. Pee- bles, this provision was considered as containing an implied inhi- bition of the right to hold the land acquired under the law, after a permanent removal from, or abandonment of the empire. (1 Tex. R. 692.) But it contains an express authority to alienate after the right of property shall have been acquired agreeably to the tenor of the law ; and the period of the acquisition of the right, is re- ferred, by the 22d Article, to the date of the concession. The right to sell, therefore, at any time after obtaining the grant and before leaving the empire, seems clearly deducible from the terms and provisions of the law. The 23d Article provides that " If after two years from the date of the concession, the colo- "nist should not have cultivated this land, the right of property "shall be considered as renounced." The vendee would doubt- less take, subject to this condition. But there is nothing in the law which would permit its performance within a less pe- riod than two years ; or which necessarily requires perform- ance by the original grantee in person. If performed within the two years, whether by the original grantee or by his ven- dee, the requirement of the law will have been fulfilled. (Jen- kins v. Chambers, 9 Tex. R. 167.) But if proof of performance of the condition of cultivation were necessary in this case, it sufficiently appears by the certificate of the Empresario at- tached to the deed, and by the evidence upon the trial, that it was performed by the grantee in person. There is therefore nothing in the objection.

But the right of the plaintiffs to recover in this action, is questioned upon other grounds, which are entitled to more con- sideration.

The defendants, Portis and wife, pleaded, in substance, that

the deed of the 5th of February, 1825, to the plaintiffs' ances-
tor, James E. B. Austin, was made for the sole use and benefit
of Stephen F. Austin ; that he was the real vendee ; and that
the plaintiffs' ancestor was but a mere nominal party to the
deed, not having any real or beneficial interest in the land con-
veyed.   If it was true that he was a merely nominal party to
the deed ; that the consideration passed from Stephen F. Aus-
tin, and the conveyance was made for his sole and exclusive
benefit, it would seem that the nominal vendee was a mere
naked trustee, having no estate, no interest in the lands con-
veyed, which would pass to his legal representatives, or which
his heirs could take by inheritance.   And there can be no
question that the evidence conduces strongly, if not conclusively,
to prove that such was the character of the conveyance.   This
is as clearly shown by the evidence which was admitted, and by
that which was, we think, improperly excluded, as, perhaps,
any fact of that nature could well be established by the testi-
mony of living witnesses after so great a lapse of time.   Not to
mention in detail the evidence tending to that conclusion, it
may suffice to observe, that the witness Williams, who had the
best means of information, and who speaks to the facts within
his personal knowledge, testifies positively to the fact that Ste-
phen F. Austin was the real party to the controversy, and that
the consideration passed from him.   The testimony of Chris-
man and others, intimately acquainted with the parties and
their actings and dealings in relation to this land, strongly
corroborates his statement; and there is nothing in the evi-
dence to the contrary.   The land was always claimed by Ste-
phen F. Austin ; and never by James E. B. Austin.   The acts
and declarations of the former, asserting title in himself, were
open, public and notorious ; and though they must have been
known to the latter, it does not appear that he ever asserted
any claim to the land whatever.   It was not even known to
some, it seems, to most of the witnesses intimately acquainted
with the parties, that the deed had been taken in his name.   He
was a young man, living with his brother, Stephen F. Austin,

at the time, industrious and trustworthy, the witnesses say, but having but little, if any pecuniary means of his own. He had his brother's confidence, doubtless; and appears to have been but the passive instrument, whose name was used by his brother in taking the conveyance for himself, and to his own sole use and benefit. He does not appear to have had, or ever to have supposed that he had, any interest in the land, by reason of the conveyance being taken in his name. There is, in a word, everything to show that the right acquired under the deed was in Stephen F. Austin. The consideration passed from him; and he was the real vendee. Such unquestionably was the understanding of all the parties, at and after the making of the deed. And on the other hand, there is nothing to show that the plaintiffs' ancestor ever set up any claim of title or right in himself to the land conveyed, during his lifetime; or that any one else ever set up any such claim under or through him, during the lifetime of Stephen F. Austin, or until the commencement of this suit, a period of twenty years from the date of the deed. There was an attempt to prove admissions of the plaintiffs' right by those from whom the defendants derive title; and there was the testimony of one witness only, that in 1838, John Cummings admitted to him that his brother James had sold the undivided half of the land granted to James E. B. Austin; and that he was living on the land and holding possession for the benefit of the heirs of James Cummings and said Austin. But this statement is unsupported by any other witness, or circumstance in the case; and is at variance with the statement proved to have been made by John Cummings to another witness, (Atkinson,) who went to him for information respecting the title (in consequence of one Lapp having offered to sell to the witness,) three years before. It is at variance, too, with the recitals of the deeds of partition between John and William Cummings and Austin, and between themselves; and indeed with all the other acts and declarations of the parties shown in evidence. This evidence of the oral admissions of a deceased party, made in the hearing of a single witness,

and so entirely unsupported, not to say contradicted by the other evidence in the case, ought certainly to be received, after such a lapse of time, with great caution, and due allowance for the frailty of memory and the liability to mistake or forget the precise terms and true import of the language used. No one else testified to any such admission, or to any part that renders it probable that such an admission would have been made. On the contrary it is rendered altogether improbable, from the well established fact that the right and title had always been asserted and admitted to be in Stephen F. Austin; and never in his brother James. And it must be admitted to be highly probable that the witness, if not mistaken as to the fact of the admission, was at least mistaken as to the party in whose favor it was made.

The evidence admitted, and that of Chrisman, which was excluded at the instance of the appellants themselves, but for what reason is not percieved, establishes beyond a reasonable doubt, that after the death of the original grantee, James Cummings, his surviving brothers, John and William, (who appear to have been intended and understood to be joint recipients with him of the bounty of the Government in the original grant) and Stephen F. Austin, made a division and partition among themselves of their respective interests in the land under the grant and the deed of the 5th of February, whereby the two middle leagues, as they are described by the witnesses, were surveyed and set apart to Austin, the upper league and a half to William, and the lower league and a half to John Cummings. This partition appears to have been subsequently recognized and acquiesced in by all the parties in interest. It was distinctly recognized and virtually admitted, by the present parties appellant, in their inventories rendered in the administration of the estates of John and William Cummings, though they resisted the proof of it upon the trial. It was asserted and relied on by their co-defendant. Upon this state of case, which seems too well established in evidence to admit of doubt that it is the true state of the case, it is not easy to perceive how the present

plaintiffs, as the heirs of James E. B. Austin, can maintain their action, for a partition of the undivided half interest in the entire five leagues, under the deed of the 5th of February, 1825. And if, by right of inheritance, the plaintiffs could sue for an interest in this land, it is difficult to conceive what answer they can have to the defence of limitation, pleaded and relied on by the defendants. The ancestor of the defendants was in possession at the date of the deed of the 5th of February; and at the date of the partition, by which the co-tenancy created by that deed was dissolved and determined; and the defendants, and those under whom they claim, have continued in possession ever since; holding adversely to all persons except Stephen F. Austin; and holding the part apportioned and set apart to them, adversely to him and all others. If, therefore, it be considered that the plaintiffs could assert title, under the deed of the 5th of February, against all persons but the real beneficiary, in the deed, still they are precluded from maintaining this action, by limitation, which commenced to run in the lifetime of their ancestor. They cannot recover in the capacity of trustees for the benefit of the heirs of Stephen F. Austin; for they do not seek to recover in that capacity, and by bringing this action in their own right, they have repudiated the trust relation.

If this were an action of ejectment, or of trespass to try title, it would be sufficient to defeat the plaintiffs' action, to show an outstanding, paramount title in a third person. But being an equitable proceeding, it was, perhaps, necessary for the defendants, to enable them to defeat the plaintiffs' title on the ground of a resulting trust, or an equitable title out of the plaintiffs, to show, either that they had acquired that title, or had some valid defence to urge against it. And if the latter, the holder of the title must have been made a party to the suit, before his rights would be adjudicated upon by a Court of Equity. The defendants have urged certain defences against the title of the beneficiary in the deed, Stephen F. Austin; but without making him or his heirs in whom the title resides, party to the suit. They

allege that the sale was void for fraud, and for lesion. But before they should have been heard to urge these defences, or to ask an adjudication upon the title of the heirs of Stephen F. Austin, they should have been required to make them parties to the suit, in order that they might be heard, before there was an adjudication upon the validity of their title, by which their rights might be adjudged forfeited, annulled or divested. Of the alleged grounds of invalidity in their title, it may be observed, that the defence of lesion was unsupported by the evidence, even if the right to impeach the validity of the sale on that ground, had not been long before barred. And the defendants could not impeach the title on the ground of fraud, in which, if it had been made to appear, it would also have appeared that their ancestor, under whom they claim, was equally implicated with his vendee. These defences therefore were manifestly untenable, even if they had been urged against the title of a party before the Court, and in a situation to controvert them. But the Court ought not, it would seem, to have proceeded to adjudicate and dispose of the subject matter of the suit, among parties, some of whom appear not to have been entitled, and when the real parties in interest were not before the Court. And if it were necessary to the present disposition of the case, to pass upon that question, we might feel no hesitancy in holding that the verdict was contrary to the evidence, in that it found the plaintiffs entitled to the undivided half interest in the entire five leagues, when it is evident there had been a partition of the land between the real parties in interest, and that the upper and lower portions of the tract, had been set apart to the ancestors of the defendants, and had been held by them adversely to the plaintiffs a sufficient length of time to bar a recovery in their own right, by limitation.

It might be urged as an answer to this appeal, that the appellants did not rely on the partition; and that they objected to evidence of a partition offered by their co-defendant. They, however, pleaded and relied on the defence of limitation; and if they did not place themselves, by their pleading, in a situa-

tion successfully to controvert the right of the plaintiffs to re-cover on the question of title, they did so upon their defence of limitation.   For under this defence, it was competent for them to show, as the evidence does show, that whatever right or title they acknowledged in another was in Stephen F. Aus-tin ;  and that as to any right or title in the plaintiffs, they claimed and held adversely.   But by the instructions of the Court to the jury, the defendants were effectually precluded from deriving any benefit from the evidence of title in Stephen F. Austin, or of a title out of the plaintiffs ; not only as respected the right of the plaintiffs to sue, but also as respected the de-fence of limitation.   The Court was asked by the plaintiffs to instruct, and did instruct the jury in substance and effect, and in a variety of forms, that no contract, agreement, partition, or transaction in relation to the lands, or the manner in which they were to be, or were, in fact, held, made between Stephen F. Austin and the Messrs. Cummings, or by the latter among themselves was binding upon the plaintiffs, or could affect their right to recover, unless it was proved that such contract, agreement, or transaction was made with the knowledge and consent of the plaintiffs' ancestor, James E. B. Austin.

This was assuming and taking for granted the very ques-tion in issue ; that is, whether the ancestor of the plaintiffs had acquired, or the defendants' ancestor had acknowledged in him, any interest or right in the land, under the deed.   If he had acquired no right, and the defendants acknowledgements of title had no reference to such right in him, but in another ; it was, of course, immaterial whether he knew of their dealings respecting the title or not.   If it were conceded, as the in-structions assumed, that the deed vested in him the equitable, as well as the legal title, notwithstanding the evidence to the contrary, then, of course, no disposition which third persons might assume to make of it, without his consent, express or im-plied, would be binding on him or his heirs.   And then it would have been a question, proper to submit to the jury, whether the evidence was sufficient to affect him with notice of

the dealings of his brother, and the other parties concerned, in relation to the title, partition and distribution of the land. This question of notice would have been material, assuming that it had not been shown, that this party had no interest to be affected by, or to entitle him or his heirs to complain of, the want of it. And this was what the instructions in question, the giving of which was made a ground of the application for a new trial on the part of the appellants, did assume, and in effect, decide, contrary to the evidence in the case. And the general charge of the Court appears to have proceeded throughout, upon the same assumption; that is, that the title, legal and equitable, was vested by the deed of the 5th of February, absolutely in the nominal vendee; and that all the acts of the ancestors of the defendants, in their dealings with Stephen F. Austin, in relation to the title and possession, are to be taken as admissions in favor of the title of the ancestor of the plaintiffs, under that deed. This manifestly was error; and there can be but little doubt, it was the view of the case which controlled the verdict of the jury.

There was error also in excluding the deposition of the witness Williams, in answer to the fourth interrogatory. It was material and pertinent to the issue, going to show who were the real parties to the contract; from whom the consideration passed, and in whom the right was understood and admitted to be, under the deed of the 5th of February, 1825.

As respects the questions arising between the appellants and their co-defendant, Samuel A. Cummings, it is to be observed, that the latter asserted a claim of title by inheritance from his father, only to the portion of the grant which had been apportioned and set apart to him in the partition. If his right had been conceded by his co-defendant, there would have been an end of the litigation between them. But it was contested. It becomes necessary therefore to inquire, whether his right could be defeated by reason of the objections urged by the appellants. And we are of opinion that it could not. Having been born in the country, of parents who were citizens domi-

ciliated here, not having adhered to the enemy, or gone to reside in the enemy's country during the war ; being an infant when taken abroad, and having a guardian previously appointed to represent him, during what was intended at the time, to be a temporary absence ; having been represented in his absence in the assertion of his rights of property, in judicial proceedings, by the appellants themselves ; and having returned to the country, and asserted his rights of citizenship and property, as soon as he was of lawful age to do so ; we know of no principle or adjudication, upon which it can be maintained that the disability of alienage attached to him, in respect to his right of inheritance to the land claimed ; or by which the appellants, after their solemn admission of his right, can now be heard to controvert it.

In 1839, the now party appellant petitioned the Probate Court for letters of guardianship of their now co-defendant, representing him as the infant son and heir of William Cummings, and as having property in the country consisting of lands, for the protection of which the appointment was asked ; and obtained an order of Court conferring the appointment. And as late as 1843 and 1844, they obtained administration of the estate of his father, William Cummings, and rendered an inventory of the property of his estate, including the land now claimed by the heir. After those repeated solemn acts of admission, it is difficult to conceive upon what rational principle the appellants can claim now to be heard to controvert his right. There is no pretence of ignorance or mistake as to the facts in which it consisted. And though, in his absence, they assumed to act and represent him in the Courts of the country, for the protection and preservation of his rights ; on his return, they allege that he abandoned the country ; and that the disability of alienage attached to him. It might be a sufficient answer to this to say, that a party ought not to be heard thus to contradict and falsify his own solemn admissions and declarations made before the judicial tribunals. But it may be further observed, as respects the suggestion of the abandonment

of the country, that, as to the rights of property asserted in this action, the appellants could derive no benefit from establishing the fact. For if it be true, the consequent forfeiture would not accrue to the appellants, but to the State. And as respects the disability of alienage, there is no principle upon which it can be maintained, under the circumstances of the case, that that disability attached to the defendant, in respect to his right of inheritance.

There are other cases before the Court which will require a consideration of the respective rights of these parties in reference to these, and other questions, not arising upon the pleadings in this case. In the decision of those cases, the questions involved may receive a more particular examination and authoritative decision than is necessary in the decision of this case. The only right here asserted by the defendant Cummings, is the right of inheritance from his father. That right is fully established by the evidence; and the jury, we think, would have been warranted by the evidence in finding a verdict in his favor for that part of the land claimed by him. Had they done so, the plaintiffs not appealing, we might have reformed and affirmed the judgment as to him ; thereby putting an end to the litigation between the defendants. But as the verdict will not enable us to reform the judgment ; and its reversal as to the appellants will necessarily prevent its execution as to their co-defendant, it must be reversed as to all the parties to it, and the cause remanded, in order that the parties may so amend their pleadings and proceedings as to present for adjudication the rights they may have respectively in the subject matter of the suit, according to the merits of their respective claims, and the case proceed to a final judgment, which shall do justice to all, and bind all the parties in interest in the subject matter of the litigation.

Reversed and remanded.