Tomas De La Vega v. Esther Y. League et als.

(Case No. 838.)

1. Parties — Equity.— See this case for an illustration of the rule that equity will not make a decree when it is apparent that it cannot definitely settle the rights of the parties, or make a final disposition of the subject of litigation.

2. Same.— The rule above quoted should be stringently enforced in suits for partition. If the bill shows the existence of parties in interest who have not been joined, it will be dismissed on demurrer; if their existence is not revealed by the bill, but is disclosed on the hearing by the evidence, the case should be stopped until those parties are cited. Citing Ship Channel Co. v. Bruly, 45 Tex., 8.

3. Parties — Practice.— When one holds the land of another as security for a debt, the ultimate right of property is with him who thus incumbers the land, and this right may be levied on and sold under execution. If the owner who has thus incumbered the land again mortgages it, and afterwards, and before foreclosure of the lien, his interest is sold under execution, the purchaser succeeds to all the rights of the mortgagor; and if he, or his vendee, is made a party to a suit to settle the interest of the respective parties in the land (there being no allegation that nothing was left after paying off incumbrances), it is error to dismiss the suit as to them, for which a judgment adjudicating the rights of the other parties will be reversed.

4. Reconvention.— A party claiming title to land derived from opposing claimants may, in a suit between them, assert his right derived from both sources, and have the title, shown to be valid, enforced in reconvention against the plaintiff.

5. Trespass to try title — Jurisdiction.— The requirement of the statute, that suits for the recovery of land "shall be brought in the county where the land or a part thereof is situate," confers a mere personal privilege which may be waived, and the judgment of a district court of some other county whose jurisdiction has been submitted to without question will settle the title to the land as effectually as if suit had been brought in the county in which the land is situate.

6. Partition.— In Texas, where there is no distinction between law and equity in the determination of causes, the strict rules of chancery do not prevail in proceedings for the partition of land. In such proceedings questions involving conflicting claims to title by parties thereto may be determined.

7. Same — Practice.— When in a suit for partition it is claimed by an answer in reconvention that the title is not only involved, but that one of the claimants with whom partition is sought claims the entire land, and asks judgment thereon, the partition proceeding must be delayed until the question of title is adjudicated.

8. Estoppel — Partition.— A party who takes part in a partition is estopped from afterwards setting up the superior bill as a basis of recovery against one of his co-tenants who also took part in the partition.

9. Trespass to try title — Parties.— Where in proceedings for partition one party asserts superior title in himself to the entire property, thus practically changing the suit to one of trespass to try title, any one may become a party who claims and asks an adjudication on an adverse interest in the land.

10. INADEQUACY OF CONSIDERATION — CHARGE OF COURT — FRAUD.— A charge to the effect that inadequacy of consideration paid at a sheriff's sale, when so great as to shock the conscience, may be regarded as evidence of fraud in the purchase, is error, when the evidence shows that the land was sold subject to prior liens, and there is no evidence showing what would have been the value of the land in excess of the amount for which it was incumbered.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

This suit was brought in 1874 by Esther Y. League and her children, heirs of Thomas M. League, against John W. Lapsley, the heirs of T. B. Goldsby, W. Plattenberg, T. J. Frow, the heirs of J. L. Price, Simon Mussina, N. B. Yard, Geo. Butler and Tomas de La Vega, and was consolidated with a suit against Thomas M. League and John C. Watrous, brought by John W. Lapsley to recover on a note for $4,533.

It was alleged that prior to July 9, 1850, when that note was given, League made a contract for the purchase of the La Vega eleven-league grant of land in McLennan county, and of certain land certificates, but being unable to complete the purchase, one John C. Watrous induced John W. Lapsley, T. B. Goldsby, W. Plattenberg, T. J. Frow and J. L. Price to furnish the purchase money, and to become jointly interested in the purchase with Thomas M. League and himself. That in carrying out their agreement, Lapsley, and the other parties thus induced with him, furnished the entire purchase money ($9,064), and the title was placed in Lapsley, when the note for $4,532 was executed by Watrous and Lapsley, it being for half the purchase money; that after said note and other expenses named should be paid, it was stipulated that the equal half of all the property should be conveyed by Lapsley to League and Watrous, the other half to belong jointly to the other parties. A copy of the instrument evidencing the agreement was made and exhibited. It was alleged that Watrous never paid any portion of the note, but that the same was paid by League and his representatives, and was a lien on Watrous' interest in the hands of Lapsley.

It was alleged that Watrous' interest was conveyed to N. B. Yard to secure an indebtedness to Geo. Butler of about $24,000; that one E. J. Gurley purchased, as attorney for Moreland, the lands conveyed at execution sale for $100, and then released to Moreland; that one Wm. Alexander, acting as attorney for Moreland, afterwards conveyed the interest thus acquired at sheriff's sale to Simon Mussina, who conveyed to La Vega, but that the authority of Alex-

ander to convey was denied by Moreland; that Thomas J. Frow also claimed some lien on the interest of Watrous, the character of which was not known. The petition neither admitted nor denied the legality of these claims of interest by La Vega, Frow, Moreland and Butler, but prayed that the parties be required to interplead and establish their interests, all of which were alleged to be in subordination to the rights of Lapsley for payments of money, etc., shown to be due from Watrous. In accordance with the prayer, John W. Lapsley, La Vega, Mussina, Yard, Butler, Moreland, Plattenberg, Frow, the heirs of Goldsby and Price and John C. Watrous, became parties defendant. Watrous' death being suggested, his widow was made defendant.

Lapsley answered, alleging his expenses and disbursements in protecting title, for which he prayed judgment. Golsby, Price, Mrs. Watrous, Butler and Yard also answered.

October 2, 1874, La Vega and Mussina also answered, claiming all of Watrous' interest under the Moreland purchase; that they purchased it only to secure their peace under a title already existing; that they owned the entire La Vega eleven-league grant, when they were illegally ousted from possession by the plaintiffs and their co-defendants on the 1st of January, 1873.

March 7, 1876, La Vega filed amended answer, in which he alleged "that said purchase and agreement (A. D. 1850) was a fraudulent contrivance and combination made and done to prejudice the rights of defendant out of said tract of land, and that they, with others acting in complicity with them, among other acts of fraud, did wrongfully and fraudulently make use of and utter a certain false instrument in writing as true, purporting to be the copy or 'testimonio' of an act of defendant, whereby, and by 'force and effect of which,' to deraign title to said aforesaid tract of land."

Defendant further charged "that said instrument, styled a testimonio, so made use of and uttered and published, purports to be the testimonio or copy of a power of attorney from defendant to Samuel May Williams, dated at Leona Vicario, now Saltillo, May 5, 1832, empowering said Williams to sell and convey the aforesaid eleven leagues of land, which said instrument, styled a testimonio, defendant avers to be a forgery, and not the copy of any original that exists, or that ever did exist, in the archives of Saltillo, from which the said testimonio purports to have been taken, or of any original that exists or ever did exist elsewhere, defendant never having executed, or authorized to be executed any such original, nor in any manner authorized the said Williams to sell his said land or any

portion thereof, or any other land.  In support of which averment of forgery, defendant annexes to this his amended answer, and as part thereof, sworn plea of *non est factum.*"

Defendant further charged "that said Lapsley, League, Watrous, Frow, Price and Goldsby, and others acting in privity with and representing them, had full knowledge of said instrument being a forgery, and with such knowledge have corruptly sought to sustain the same as genuine and valid by devices of fraud and covin, and by perjury and subornation of perjury."

Lapsley filed plea in abatement and demurrer to the reconvention of La Vega and Mussina, and plea of *res judicata.*  Afterwards, March 11, 1876, plaintiffs filed an amendment dismissing the suit as to La Vega and Mussina, alleging that their claim was null and void as to Watrous' interest, and that plaintiffs ought not to be required to answer to their plea in reconvention, because it was, in effect, converting the proceeding into an action of trespass to try title to land situate in the county of McLennan, and not in Galveston county where the suit was pending; denying jurisdiction of the court.

Further pleading, the plaintiffs set up that Mussina had, under oath, as the attorney in fact for La Vega, filed a bill in 1868 in the United States circuit court making Lapsley, Plattenberg, Frow, Watrous, Thomas Harrison, James Harrison, and eight others defendant, in which he claimed for La Vega title to the eleven leagues of land, and charged them with conspiracy to defraud him; that the issue of forgery set up in this suit was made in that proceeding; that issue was joined and a decree rendered November 6, 1871, dismissing the bill, and adjudicating costs for Lapsley and his codefendants.  They alleged that such decree was in full force; that the title set up in such former suit was identical with that asserted by La Vega and Mussina in this, and the parties were either in person or privity the same, and the former judgment was pleaded in bar to the reconvention of La Vega and Mussina.

Plaintiffs also filed motion to dismiss the action, suit or plea of La Vega and Mussina for trespass to try title and recover damages for lands situated in McLennan county — 1st, because the court had not jurisdiction of same; 2d, Lapsley and the equitable claimants under him are entitled to settlement of accounts and partition between themselves without being compelled to litigate in the district court of Galveston county the title to said land and trespass and damages respecting the same; 3d, reconvention rendered proceedings multifarious and such as cannot rightfully be joined; 4th, the

pretended averments of claim under Watrous show the same to be null and void, not in good faith or consistent with their adverse paramount claim.    Affidavit was made by W. P. Ballinger, counsel for plaintiffs, that La Vega and Mussina were made parties on a mistake of facts, improvidently, and that they had no scintilla of claim under Watrous.

March 14, 1876, the court sustained the plea in abatement to the reconvention by La Vega and Mussina, and dismissed the same, and they were dismissed as parties.

There was no evidence showing the inadequacy of consideration paid by Moreland at sheriff's sale.    The court charged the jury, among other things, that when the inadequacy of consideration was so great as to shock the conscience, it might be regarded as evidence of fraud.

Trial and verdict, under which a lengthy and complicated decree was entered, which it is unnecessary to notice.    Moreland recovered nothing.

*S. Mussina*, for appellants, on their right to reconvene, cited: Griffin *v.* Chubb, 16 Tex., 221; Baker *v.* Michanard, 17 La. An.; Ryan *v.* Jackson, 11 Tex., 399; Morris *v.* Reynolds, 12 Tex., 178; Evans *v.* Mills, 16 Tex., 190; Kerr on Fraud, 42; Paschal *v.* Acklin, 27 Tex., 193; Copley *v.* Berry, 12 Robt., 78; McDowell *v.* Read, 3 La. An., 393; Massie *v.* Watts, 6 Cranch; Agair *v.* Fairfax, 17 Vesey, 532; Story's Eq., § 72;·B. B. S. C. Co. *v.* Bruly, 45 Tex., 6; Adams' Eq., 230; Aykboro, Ch. Prac., 23; Fonblanque's Equity, 38; Freeman on Co-tenancy, § 502; Wilkin *v.* Wilkin, 2 Johns. Ch., 117; Manners *v.* Manners, 1 H. N. Green's Ch., 365; Bristow *v.* Richardson, 3 Humph., 435.

*Ballinger & Mott*, for appellees, on the right of appellants to maintain their action in reconvention and have a trial on the title in this action, cited:    Pas. Dig., arts. 4707, 4711; Sayles' Practice, ch. 52; Arnold *v.* Cauble, 49 Tex., 527; Pomeroy on Civil Remedies, §§ 373, 492; Burke *v.* Reilly, 16 Ind., 479; Colgrove *v.* Koontz, 76 N. C., 363; Portis *v.* Hill, 14 Tex., 69; Burleson *v.* Burleson, 28 Tex., 383; Walker *v.* Howard, 34 Tex., 478; Ellis *v.* Rhone, 17 Tex., 131; Grossmeyer *v.* Beason, 18 Tex., 765; Story's Eq. Plead., § 284; Barbour on Parties, 493; Pomeroy on Civil Remedies, § 373; Dial *v.* Reynolds, 96 U. S., 341; Frelinghuysen *v.* Coldon, 4 Paige, 206; Eagle Fire Co. *v.* Lent, 6 Paige, 637; Corning *v.* Smith, 6 N. Y., 82; Large *v.* Jones, 5 Leigh, 192; Stewart *v.* Coulter, 5 Rand., 74.

That the district court of Galveston had no jurisdiction to try title to land in McLennan county, and the suit by plaintiffs was not a suit to try title within the purview of the statute, they cited: Hearst *v.* Kuykendall, 16 Tex., 329; Miller *v.* Rusk, 17 Tex., 170; Clegg *v.* Varnell, 18 Tex., 294.

On the charge of court affecting the Moreland purchase at execution sale, they cited: Taul *v.* Wright, 45 Tex., 388.

That Watrous' interest was not subject to execution, they cited: Daughty *v.* Cox, 13 Tex., 209; Hendricks *v.* Snediker, 30 Tex., 296; Ballard *v.* Anderson, 18 Tex., 377; Sayles' P., §§ 50, 54.

WILLIE, CHIEF JUSTICE.— The first question for our consideration arises upon the action of the court below in dismissing Mussina and La Vega from the cause.

They were originally brought into this case as claimants of the Watrous interest in the La Vega eleven-league grant. Watrous was one of the signers of the Lapsley contract, upon which this suit was founded, and either he, or those claiming under him by legitimate title, owned an interest to the extent of one-fourth of the land sought to be partitioned subject to the liens with which it was legally incumbered.

It appeared from the allegations of the petition that Watrous had never paid Lapsley the money which, by the terms of the agreement, he was to pay before Lapsley could be compelled to convey him the legal title. It further appeared that Watrous had incumbered his interest with a deed of trust to Yard, to secure a debt due Butler. The petition further showed that one Moreland had obtained a judgment under which the right of Watrous in the land had been sold at sheriff's sale, and had been bought in by E. J. Gurley, attorney for Moreland, for $100, and Gurley had conveyed to Moreland. It also showed that William Alexander, claiming to be attorney for Moreland, had conveyed, or attempted to convey, this same interest to Simon Mussina, and that the latter had conveyed to La Vega.

The petition added, however, on information and belief, that Moreland wholly denied the authority of Alexander and the validity of the conveyance, and still claimed the Watrous interest. Hence the plaintiffs made Watrous himself, and the claimants of his interest in the land, and the persons holding a deed of trust thereon, all parties defendant to the bill. This was proper, for it brought before the court all persons claiming any interest whatever in Watrous' original right to the land, so as to allow them to assert that interest,

and to enable those who maintained their rights to share in the distribution of the land. . Under the allegations of the petition, and especially when taken in connection with the other pleadings in the cause, this suit could not have proceeded to a final hearing and decree as prayed for in the bill without the ·presence of all these claimants of the Watrous interest. The plaintiffs had set forth their respective claims so far as they knew or had been informed in reference to them, but did not undertake to say who were the true owners of the interest. La Vega, in his answer, alleged himself to be the true owner; Moreland's heirs made the same allegation as to themselves; and Mrs. Watrous denied that either of them had any rights in the same, but claimed this interest as surviving wife of Watrous. Considering the case upon the pleadings — as we must do in the present appeal — we cannot say who was the true owner of the Watrous interest. Three different parties claimed it — Mrs. Watrous, Moreland's heirs and La Vega. As between the first and the two other claimants, the title depended upon the validity of a levy and sale under execution. As between Moreland's heirs and La Vega, it depended upon the authority of an attorney who made the conveyance to the latter. These were questions to be determined upon the facts when developed upon trial. Until then the title to Watrous' interest would be in doubt; and, if the plaintiffs undertook to decide that doubt in advance, and to allege title in either of the claimants, and the event of the suit should show that it was in another, the object of the proceeding would be defeated, and the decree be a nullity. One of the objects of this suit may be to obtain a specific performance of the Lapsley contract; another, the adjustment of the equities between the signers of that contract as well as their successors in estate; but these were mere preliminary matters, to be settled before the principal and final object of the suit could be attained. That object was the partition of the La Vega grant among the various claimants under the Lapsley contract. As an obstacle in the pathway to a legal and complete partition lay the condition of the title to the property. The entire legal title was vested in Lapsley. He held that title in trust for himself and a number of other parties. He was to convey to them upon the payment of certain sums of money, and to sell upon certain conditions, and apply the proceeds of sale to the payment of the debts and expenses mentioned in the contract. All the claims, both to money and land, originating in this contract had to be adjusted; after this a partition could be decreed in accordance with the rights of the parties thus ascertained, and among the parties

who should prove to be co-owners of the land. To say that this is not a suit for partition is, therefore, to contradict the pleadings of the plaintiffs and the final decree prayed for in the cause.

It is a principle of equity that it will not make a decree when it is apparent that it cannot definitely settle the rights of the parties or make a final disposition of the subject of litigation. Ship Channel Co. *v.* Bruly, 45 Tex., 8; Story, Eq. Pl., sec. 72.

In suits for partition this doctrine is enforced with great stringency. If all parties entitled to an interest in the property to be partitioned are not before the court, a decree will not be rendered. If the bill shows other parties interested who have not been joined, it is defective and will be dismissed on demurrer. If the evidence shows other necessary parties not before the court, the case must be stopped till those parties can be cited. Ship Channel Co. *v.* Bruly, *supra.*

Suppose that it had been a fact admitted in the pleadings of the parties that La Vega was the lawful owner of the Watrous interest. It cannot be doubted, under the above principles, but that the court would have required him to be cited before proceeding with the cause. Why then is he not a necessary party if his title is in dispute? Will the court be allowed to decide against his title in advance and drive him from the case, retaining his opponent? That would be against both law and justice. If this cannot be done, then La Vega was as much a necessary party to this suit as Watrous or Moreland, for their title was disputed by him, as his was disputed by them. The plaintiffs did not decide between these their adversaries, but stated, as they should have done, that they each claimed the Watrous interest, and left it for the evidence to develop who was the rightful owner, and properly brought them all into the case.

But the plaintiffs now say that it was unnecessary to make La Vega a party because their petition, taken in connection with the pleadings of La Vega, show no interest in him whatever. This is based principally, if not solely, upon the idea that the interest of Watrous was not such as could be sold under execution, because too contingent, remote and undefined. What was the interest of Watrous? He joined Lapsley and others in the purchase of the La Vega grant, and in the execution of the instrument which is the foundation of this suit. That instrument placed the legal title in Lapsley, but he expressly agreed to hold it upon certain trusts. One of these was to convey a portion of the land to Watrous upon his complying with conditions named in the instrument. Upon a failure to comply with these conditions Lapsley was not to become the absolute owner

of the Watrous interest. He had the power to sell when authorized by a majority of the interested parties; but must apply the proceeds to the use of the beneficiaries under the instrument.

Watrous held towards Lapsley a position similar to that which a mortgagor holds towards a mortgagee. Lapsley held the land as security for Watrous' debt; the ultimate right of property remained with Watrous, and this could not be divested except by sale in manner pointed out by the instrument. Our courts have well settled the principle that such an interest may be levied on and sold under execution. Wright v. Henderson, 12 Tex., 43; Wootton v. Wheeler, 22 Tex., 338; Baker v. Clepper, 26 Tex., 629.

This interest was also liable to be again mortgaged, and Watrous did so incumber it to secure Butler's debt. These two liens were on Watrous' interest when sold under execution, and the purchaser bought in subordination to them. He may have obtained an interest of little or no value, but that did not prevent his holding that interest, and succeeding to all of Watrous' rights, including that of selling to Mussina by attorney. Whether there would be anything left after paying off incumbrances was a fact to be proved; there was at least no allegation to that effect in the petition. The court had no right to presume it in advance of the evidence.

We think that under the pleadings La Vega was a necessary party to the suit.

If a necessary party, and brought into court as such, the plaintiffs could not dismiss him from the cause at their own pleasure.

The reasons given for the dismissal were wholly insufficient. They may be stated as follows: The plaintiffs' counsel at the time of commencing the suit had heard that a sheriff's sale had been made of Watrous' interest, and that Mussina claimed the interest under that sale. Desiring the decree for said partition to be a finality, and bind all persons claiming under Watrous, Mussina and La Vega were made parties to the suit. That upon learning correctly the nature and character of said sheriff's sale and the claim of La Vega and Mussina, the plaintiffs' counsel believed and was satisfied that they were improvidently made parties, and that neither of them had any scintilla of claim under Watrous. That their averments showed that they had no right under Watrous, and their claim was not in good faith or consistent with the adverse claim of paramount title to the whole grant.

These objections admit that, if these defendants had the slightest claim to the Watrous interest, they were necessary parties, in order to make the decree in partition a finality. The petition and their

answer showed that they did not set up a claim to it, and they were invited into court to establish their claim if they could. The proposition was not to allow them to do so, because, in the opinion of the plaintiffs' counsel, their claim was without foundation. This was a fact that they were entitled to have tried as in other cases, and not upon an *ex parte* affidavit made preliminary to the investigation. The validity of the sheriff's sale was something to be examined into in the line of La Vega's title, as well as of Moreland's. It could not be predetermined as void by reason of the opinion of any one; but, if so, it would seem that Moreland's heirs, whose right was derived solely through the sheriff's sale, should also have been dismissed from the case. As to the other objection taken, we cannot see why a party holding titles to land derived from opposing claimants may not claim from both sources, and have the one shown to be valid enforced in reconvention against a plaintiff. We are pointed to no authority forbidding this to be done. It would be a strange ruling that a defendant, relying on what he supposed was a good defense, should not be allowed to use another defense inconsistent with it, and in the use of the latter to secure all the rights that he was entitled to assert thereunder in the particular case.

We are of opinion that the court erred in allowing the plaintiffs to dismiss the defendants Mussina and La Vega from the cause.

We come now to consider the superior title claimed by La Vega in reconvention. It is objected that La Vega's plea was in effect an action of trespass to try title for land in McLennan county and could not be brought in the county of Galveston; that, claiming under Lapsley, he could not set up a superior title in himself, and that in a partition suit no other title but that sought to be partitioned can be adjudicated.

Our statutes in force at the time the reconvention was filed provided that suits for the recovery of land should be brought in the county where the land or a part thereof is situated. This is one of the exceptions to the general rule requiring suits to be brought in the county of the defendant's residence. This requirement is not a matter that affects the jurisdiction of the district courts over the subject-matter of controversies about the title or possession of lands. Every district court in the state has cognizance of such suits; the requirement as to the county in which the suit may be brought is a mere personal privilege granted to the parties, which may be waived like any other privilege of this character. Ryan *v.* Jackson, 11 Tex., 391; Morris *v.* Runnells, 12 Tex., 176. A judgment ren-

dered by the district court of Galveston county, when the parties had submitted to the jurisdiction, would settle the title to land in McLennan county as effectually as if rendered in its own district court. Jurisdiction of causes may be obtained by defendants in counties other than those in which the statute requires them to be brought, in other ways than by express consent or by failure to claim the personal privilege accorded by law. A suit upon a monied demand, brought in the county of a defendant's residence by a resident of another county, may be met with a counter demand against the plaintiff, and a recovery may be had upon the counter demand, though if suit had been originally commenced upon it, the county of the plaintiff's residence would have had exclusive jurisdiction. And so with other cases that might be supposed. A plaintiff calling a defendant into court for the purpose of obtaining relief against him invites him to set up all defenses which may defeat the cause of action sued on, or any other appropriate and germane to the subject-matter of the suit, which should be settled between the parties before a proper adjudication of the merits of the cause can be obtained. He grants him the privilege of setting up all such counterclaims and cross-actions as he holds against the plaintiff which may legally be pleaded in such a suit.

This is particularly the case in our state, where a multiplicity of suits is abhorred, and a leading object is to settle all disputes between the parties pertinent to the cause of action in the same suit. The question of the original right to bring the cross-action in the county where the suit is pending cannot be raised; otherwise this design would, in a large number of cases, be defeated, and the various matters which could well be settled in the cause might have to seek a number of different counties, and be asserted in a number of different suits, before the controversy between the parties could be settled. The plaintiff must be considered as waiving any privilege to plead to the jurisdiction in such cross-actions, and as consenting that the defendant may assert in the suit any demands which he could plead were it commenced in the county where such demands were properly suable. The question then is: Could La Vega have set up the matters pleaded in his answer in reconvention had the land sought to be partitioned been situated in Galveston county? This question must be determined by the solution of another, viz.: Can a defendant to a partition suit who claims through the title under which the partition is sought set up a superior title to the whole land? It is doubtless true that, in a partition suit, a court of equity will not entertain any controversy as to the legal title, whether it arises

between the part owners as to their respective interests, or by reason of a claim set up by one or more of them to the entire land by title superior to the one under which the partition is asked to be decreed. In our state, where there is no distinction between law and equity in the determination of causes, an action to settle disputed titles, whether legal or equitable, may be combined with one to partition the land between the plaintiff and defendant. Hence there can be no objection to determining any questions as to title between the co-owners in a partition suit in our state, and the strict rules of chancery do not prevail.

In courts of equity the rule that a legal title superior to that sought to be partitioned cannot be brought into the suit by way of answer seems to rest upon the ground that equity will not try a title of which the courts of law have exclusive jurisdiction. But if this superior claim is a mere equitable title, and is pleaded for the mere purpose of defeating the partition, it can be set up in the answer, and, if proved, will defeat the partition. But if, in addition to the denial of a decree for partition, the owner of the superior title seeks affirmative relief by a transfer to him of the legal title to the whole premises, he may proceed by cross-bill in the same suit. German v. Machin, 6 Paige, Ch., 288. If these courts, with jurisdiction restricted to equity matters alone, allow a part owner, defendant in a partition suit, to set up a superior equitable title to the whole premises, and not only defeat the partition, but have full title under the superior equity decreed to himself, no reason can be urged why our courts of blended law and equity jurisdiction should not allow a similar plea and cross-action whether the title set up is legal or equitable. If this cannot be done, a partition may be decreed that will be of no effect for want of title to the land divided A court of equity will not permit partition to take place if it is brought to their attention that the title is in dispute. Wilkin v. Wilkin, 1 Johns. Ch., 117; Bruton v. Rutland, 3 Humph., 435; Adams' Eq., 230, note.

And when in our courts it is claimed by an answer in reconvention that the title is not only invalid, but that one of the tenants with whom partition is sought lays claims to the entire land, and asks to have his right investigated and a decree entered in his favor for the premises, they must not only delay the partition till the investigation is made, but decide the question of title as in other cases.

In California, where the system of jurisprudence knows no distinction between law and equity, it is firmly settled that a superior title to the whole land may be set up by one of the parties to the

partition suit. Between these parties disputes as to their rights or interests may be litigated and determined in such action. Morenhout *v.* Higuero, 32 Cal., 293; Bollo *v.* Navarro, 33 Cal., 465. These decisions do not seem to be influenced by the statutes upon the subject of partition, but by the fact that there is no distinction in the courts of that state between actions at law and suits in equity.

In our own state, whilst there seems to be no direct decision upon the subject, yet, in Burleson *v.* Burleson, 28 Tex., 413, which was a partition suit in which the defendants set up a superior outstanding equitable title, it was held that in order to make it available they should have shown that they owned it, or connected themselves with it otherwise. See, to the same effect, Portis *v.* Hill, 14 Tex., 75. Here La Vega claims to be the owner of a superior title to the whole land, and fulfils the requirements of the decision.

The question is also a serious one as to how far La Vega would have been estopped to sue upon his claim to the land, had he not pleaded it in this suit. In a partition of land in this state, a covenant of warranty as to the several allotments is usually implied. James *v.* Adams & Wickes, *ante*, p. 201; Ross *v.* Armstrong, 25 Tex. Sup., 370. This principle has generally found its practical application in cases where a superior title has been acquired by one of the co-tenants after partition. It would seem, however, on principle, that it might obtain as well when the tenant was the owner of that title when the partition was made. The effect of the doctrine is to estop the party who takes part in the partition from afterwards setting up the superior title as a basis of recovery against one of his co-tenants who took part in the partition.

As the court was bound to take cognizance of the controversy between La Vega and those claiming under Lapsley, we see no reason why McPhaul's heirs should not be admitted as parties to the suit. They would have been entitled to intervene had the suit been originally commenced by La Vega against the parties to the partition suit for a recovery of the land. The reconvention of La Vega has caused the present case to assume that character, and possess all the features of an action of trespass to try title; and as incidental thereto, the right of parties holding claims to the land under the La Vegas, to assert their claims and have an adjudication of them in the suit, must necessarily follow.

We think the court erred in its charge to the jury in reference to the sheriff's sale under which Moreland claimed.

The property sold was heavily incumbered with liens, and there was no proof which would tend to show that the price given for it

was inadequate. Without proof of inadequacy of price there was nothing upon which the charge could be supported. Being unwarranted by the evidence it should not have been given.

For the errors mentioned in this opinion the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered July 15, 1885.]